[L. A. No. 3533.   In Bank.—April 11, 1914.]

DEL MAR WATER, LIGHT & POWER COMPANY (a Corporation), Petitioner, v. JOHN M. ESHLEMAN et al., Constituting the State Railroad Commission, Respondents.

RAILROAD COMMISSION—POWER TO COMPEL CORPORATION TO DEDICATE PROPERTY TO PUBLIC USE.—The state railroad commission has no power to compel a corporation which owns property in private right, and has not dedicated it to any public use, to apply it to a public use of any kind.

ID.—WATER COMPANY—WHETHER ENGAGED IN PUBLIC SERVICE—POWER CONFERRED BY ARTICLES OF INCORPORATION—ACTUALLY ENGAGING IN PUBLIC SERVICE.—The fact that its articles of incorporation empower a corporation to engage in public service does not, of itself, constitute proof that it is engaged in public service, or that it has dedicated such property as it may own to such service. One may

acquire and hold a water supply and waterworks and thereby distribute and sell water for domestic use and irrigation or other purposes, without engaging in public service. The mere fact, therefore, that a company having such powers has acquired a water supply and constructed waterworks constituting a system which it is operating for compensation, does not necessarily justify the conclusion that it is engaged in public service, or that its water is dedicated to public use. The only effect of the adoption of such articles by a corporation is to give it the capacity to engage in such public service if it so desires. After having become incorporated in this manner, it has the power to engage in such service in the same sense that an individual has power so to do. It may or may not do so, and until it does, it cannot be said to be subject to the jurisdiction of the state railroad commission.

ID.—FINDING OF RAILROAD COMMISSION—WHETHER SHOWS CORPORATION ENGAGED IN PUBLIC SERVICE.—A finding by the railroad commission that a corporation owns and is operating a water system for compensation, and that it has a water supply sufficient in quantity to supply a certain applicant, is not the equivalent of a finding either that it is engaged in operating its plant for public use, or, if it is, that the applicant is one of the persons entitled as a beneficiary of such use.

ID.—CORPORATION APPLYING PART OF PROPERTY TO PUBLIC SERVICE—COMPELLING EXTENSION OF SERVICE.—The railroad commission cannot, whenever it finds a corporation engaged in public service and applying a part of its property to such service, take the entire property of the corporation and compel the dedication thereof to public use and direct its distribution to such portions of the public as to the commission may seem best.

ID.—INTERPRETATION OF PUBLIC UTILITIES ACT—EXTENSION OF PUBLIC SERVICE.—While sections 5 and 36 of the Public Utilities Act, when taken literally, seem to empower the railroad commission to direct any public utility to extend its plant and enlarge the territory supplied by it in such maner as the commission shall judge advisable, a proper interpretation of these provisions must be that they are limited in their application to such public service corporations as may have devoted their entire property to the use of the entire public, or to those which may have undertaken to supply a certain district, such as a city, and dedicated their property to that service, and which afterward may have failed or refused to give to such district an adequate service, or failed or refused to extend the system and supply to parts of the district, when it was within its means to have done so and such extension would not be unreasonable.

ID.—WATER COMPANY—RIGHT TO MAKE LIMITED DEDICATION TO PUBLIC USE.—One owning a water supply is not compelled to dedicate

all of it to public use. He may dedicate a part of it, only, to such use, preserving the remainder for private purposes or for private sale or disposition as he sees fit. And a water company has the right to make such limited dedication, and to decline to furnish its water to persons not within the area it has undertaken to serve.

ID.—RIGHT OF INDIVIDUAL TO WATER SUPPLY—CONDITION PRECEDENT.— The fact that a corporation is the owner of and is operating a water system for compensation, and the fact that it has the power by reason of its articles of incorporation to engage in public service, are not sufficient to authorize the conclusion that any particular person is a beneficiary of the use which such company is administering, or that any of the outlying territory is entitled to the service. It still remains necessary to ascertain the fact that such person is such beneficiary; and that he is within the district, and of the class, for which such dedication is made.

ID.—SCOPE OF DECISION—DISTRICT TO WHICH WATER DEDICATED.— The concurring opinion in this case contains the only propositions which are to be considered as decided. It does not hold that the plaintiff company is not a public utility, or that it is not engaged in distributing water for public use; it merely declares that the land of the claimant, Glass, is not, and is not found by the commission to be, within the district, or area, to the use of which the water owned or controlled by that company is dedicated, and therefor that he is not entitled to demand distribution thereof to his land.

ID.—OPINION IN BANK—NECESSITY OF CONCURRENCE OF FOUR JUSTICES. In the decision of a case before the supreme court in Bank, the concurrence of at least four justices is necessary, and any proposition or principle stated in an opinion is not to be taken as the opinion of the court, unless it is agreed to by at least four of the justices.

APPLICATION for Writ of Review to be directed against John M. Eshleman, Alex. Gordon, H. D. Lovel, Max Thelen, and Edwin O. Edgerton, as constituting the Railroad Commission of the State of California.

The facts are stated in the opinion of the court.

Edward G. Kuster, for Petitioner.

Max Thelen, Douglas Brookman, and John M. Eshelman, for Respondents.

Samuel C. Wiel, *Amicus Curiae.*

MELVIN, J.—In this proceeding in *certiorari* this court is asked to review and set aside an order made by the railroad commission by which petitioner was directed to deliver from its water system a supply of water for the use of one Glass, who owns property in the Del Mar Heights Tract, said Glass to pay one-half of the cost of extending petitioner's pipeline to the north boundary of said Del Mar Heights Tract, the designated point of delivery.

The essential facts developed before the railroad commission are as follows:

In February, 1906, the South Coast Land Company was incorporated and shortly afterward bought the townsite of Del Mar, with the exception of a few lots in the locality known as the "old town." The corporation also acquired other realty in that vicinity. In January, 1908, the South Coast Land Company entered into a contract with the Santa Fe Land Improvement Company by which the latter company leased to the former so much of its property on the San Dieguito Ranch, six miles from Del Mar, as might be necessary for sinking wells. Under the terms of the lease, the lessee agreed not to pump more than fifty miner's inches of water during any twenty-four hours. The lessee likewise promised to pump for the lessor water not to exceed fifty thousand gallons during each twenty-four hours for use on the lessor's ranch, and to furnish the Atchison, Topeka & Santa Fe Railway Company with water for certain specified purposes at Del Mar.

The South Coast Land Company, in February, 1908, brought about the incorporation of the Del Mar Water, Light and Power Company for the primary purpose of supplying water, light, and power to purchasers of land from the South Coast Land Company. To this water company the land company has assigned its lease from the Santa Fe Land Improvement Company for a water supply. The water company has constructed elaborate works by which, pumping from two or three large wells which it has sunk on the leased property, it supplies its quota of water to the Santa Fe Land Improvement Company and to its own customers. These include twenty-four consumers on land bought from the South Coast Land Company and seventeen inhabitants of that part of Del Mar known as the "old town." These latter are all of the con-

sumers of water in said "old town," and they were found there when the land company bought the rest of the town-site. They were occupying land not purchased from the South Coast Land Company and were formerly supplied from wells which the said land company bought, but the use of which was discontinued when the Del Mar Water, Light & Power Company brought its new supply to the town. A very large quantity of water is furnished by this company to the hotel, garage and power-house of the South Coast Land Company. The company has on two occasions sold water to persons engaged in highway construction and has occasionally supplied some water to farmers who have hauled it away in barrels, although some applications for water to be removed in this way have been refused. The articles of incorporation of the water company give it general powers to sell water and to generate and furnish electricity for light and power, but no territorial limits are defined as setting aside the area to be served. The principal place of business is Del Mar. The Del Mar Heights Tract, on which the property of Glass is situated, is surrounded on three sides by land belonging to the South Coast Land Company, but it is much more elevated in parts than any of the property of that corporation, which is being supplied by the Del Mar Water, Light & Power Company. The Glass property is much higher than the reservoir on Inspiration Point from which the water company conveys water to the property which has been sold by the South Coast Land Company.

After taking testimony regarding the operation of the water company and examining experts with reference to the amount of water which might be developed by the water company and its lessor on the latter's property (for the lessor had reserved the unlimited right to develop water on its own account and has developed and is using a considerable and increasing amount) the Railroad Commission found that the Del Mar Water, Light & Power Company owns, controls, and operates a water system for hire; that it may reasonably take the fifty miner's inches per day from the sands of the San Dieguito River under its contract with the Santa Fe Land Improvement Company; that the maximum consumption of water hitherto delivered by the water company has been about 8.61 miner's inches per day; that the company "will not

within a reasonable time require said fifty (50) miner's inches of water for use on the lands owned by the South Coast Land Company, and that it will have on hand an additional supply of water in such an amount that it can reasonably and safely supply'' the land of Mr. Glass; that the present plant of the water company will be adequate for a number of years to supply the inhabitants of the ''old town'' of Del Mar, the purchasers from the South Coast Land Company and the settlers on Del Mar Heights Tract; that the only additional piping necessary to the delivery of water at the border of said Del Mar Tract would be a pipe-line from the water company's tanks on Inspiration Point to the designated point of delivery. The Del Mar Water, Light & Power Company was directed to construct such pipe-line, to collect one-half of the cost thereof from Mr. Glass, and thereafter to deliver water for his use at the point designated, charging twenty-five cents per thousand gallons. In the opinion of the railroad commission, the learned commissioner, Mr. Thelen, said with reference to the construction of this pipe-line:

''The engineering question of delivering water to or near the northern boundary of Del Mar Heights Tract is a simple one. There was some conflict of testimony as to the exact location of the pipe, but all parties agreed that it is feasible to lay a pipe-line from the tanks on Inspiration Point, through Arden Heights No. 6, to or near the northern boundary of Del Mar Heights Tract. The distance from the tanks is about 4,300 feet. The South Coast Land Company, shortly after Arden Heights Tract No. 6 is placed on the market, will have to lay a pipe-line through that tract for its own purposes. The pipe-line so laid can readily be used to supply water for use on plaintiff's property. Plaintiff can then pump the water from the point of delivery to his own property, as he has agreed to do.''

The plaintiff mentioned is Mr. Glass, and the ''Arden Heights Tract No. 6'' is a tract of land belonging, not to the water company, but to the South Coast Land Company. The opinion also contains the following paragraph:

''As the South Coast Land Company might not need the pipe-line throughout the entire extent of its Arden Heights No. 6 Tract, at least for some time, it would not be fair to the defendant company to compel it to bear the entire cost of

the installation of this pipe-line, and on the facts of this case, I am of the opinion that the defendant company should construct this pipe-line, but that one-half of the cost should be borne by plaintiff. If other residents of Del Mar Heights Tract later derive water through the same source, plaintiff may call upon them to share with him the outlay which he has made.''

Petitioner proceeding under section 67 of the Public Utilities Act (Stats. Ex. Sess. 1911, p. 55), contends: 1. That the commission exceeded its authority, for the reason that the Del Mar Water, Light & Power Company is not a public utility; and, 2. That, conceding for the purposes of argument the *status* of the petitioner as a public utility, the railroad commission has not regularly pursued its authority, and the authority pursued is beyond the power of the legislature to confer.

It is not necessary at this point to review the constitutional and statutory authority under which the commission acts, because it is conceded that if the petitioner is not engaged in a public use the commission has exceeded its jurisdiction. It is well to remember, however, that "a public utility" as defined by the constitution (art. XII, sec. 23) is, so far as a corporation like the petitioner is concerned, one owning, operating or controlling a plant or equipment "for the production, generation, transmission, delivery or furnishing of heat, light, water or power, . . . either directly or indirectly, to or for the public."

That the intention of the incorporators of the water company was merely to furnish an instrumentality for managing and operating the water department of the South Coast Land Company there can be little doubt. But the finding of the commission that petitioner is a public utility is based in part at least upon its articles of incorporation. These are general in their terms, authorizing the company "to construct, buy, lease, and otherwise acquire and dispose of, hold, manage, control, and operate waterworks and distributing systems, ditches, canals, pipe-lines, and all other means or appliances for the acquisition, sale or distribution of water for domestic, irrigation and all other purposes, also to sell and distribute water for domestic, irrigation and all other purposes." It is true that these provisions are broad and that the company

might, under its charter, engage in business as a public utility. The mere chartered authority does not, however, mark the nature of the operating corporation any more than the language of a notice of appropriation binds the appropriator to furnish all of the territory mentioned therein. (*Palmer* v. *Railroad Commission, ante,* p. 163, [138 Pac. 997].) It is the naked authority to do business, but unless it be pursued in a certain way it does not make the corporation a public utility. It is true that the corporation did not, as it might have done, in its by-laws limit the use of its water to the purchasers of land from the South Coast Land Company and to the corporations which it was required to furnish with water under the terms of its lease. But in practice its contracts were with the vendees of the land company. The serving of water to the seventeen inhabitants of the "old town" of Del Mar was not sufficient to make the water company a public utility offering its water to the general public. When the land company bought all the unsold lots of the townsite, its property surrounded the places of residence of these inhabitants of "old town." It bought and abandoned the old wells from which these people derived their supply, and its arrangement with the water company to serve water to them no more constituted the latter a public service corporation than did that contract by which the Santa Fe Land Improvement Company was to receive a certain quantity of the water which might be developed. The sales to contractors who were engaged in road building were no more significant than would be similar accommodations by a farmer from his wells, and the same thing may be said of the trifling amounts of water sometimes sold to neighbors and by them hauled away in barrels. That the water company had refused to furnish persons who had not purchased land from the South Coast Land Company was shown without contradiction, and while the reasons assigned were sometimes the scarcity of water, the fact of refusal remains. The fact is highly significant. It is also significant that under the arrangement which the water company had with the land company the latter was furnished with a large amount of water through unmetered pipes for the use of its hotel and other buildings. All of these facts and circumstances indicate that the Del Mar Water, Light & Power Company was merely the incorporated

water department of the South Coast Land Company. In-
deed, the railroad commission, while holding that the water
company was organized as a public utility, recognized some
superior right to the water by the South Coast Land Com-
pany. The following quotation from the opinion illustrates
this:

"Where a water company has been organized as a public
utility by the owners of a tract of land for the purpose, pri-
marily, of developing that tract, and where the water com-
pany thereafter makes arrangements with the owners of water
held in private ownership, as is the fact in this case, and
water is developed, the owners of the land in question should
certainly have, within reasonable limits, the first use of the
water so developed. Accordingly, if it appeared in this case
that all the water which the water company may develop
under its contract, and such additional water as it may secure
from the Santa Fe Land Improvement Company, in case such
additional water may be developed, is necessary for the rea-
sonable development of the lands of the South Coast Land
Company within a reasonable period of time, this commission
would not compel the defendant to supply water to outsiders."

It is explained in the brief that this language merely meant
that if in the future it becomes necessary to limit the terri-
tory to be served by the utility, it would be fair and reason-
able to consider first the lands of the South Coast Land Com-
pany. If, however, the water company has held itself out
to the general public of Del Mar as willing to furnish water
to that territory, why should the former *ownership* rather
than the *location* of property be the controlling factor in
case a subsequent limitation of the area to be served should
become necessary? No logical reason presents itself to our
minds why one part of the community should thus be favored
unless there be a recognition of the right of private contract
between the water company and a selected class of customers,
and the moment such right is recognized the *status* of the
water company as a supposed public utility disappears. Dur-
ing the hearing and determination of the case the railroad
commission sometimes recognized the practical identity of the
two companies, yet insisted that the Del Mar Company was a
public utility. For example, the commission has ordered the
water company to extend its pipe across the land of the

other corporation, although the latter was not a party to the proceeding.  We are of the opinion that the Del Mar Water, Light & Power Company never intended to engage in a public service and that it did not do so.  Whenever the land company sold a lot it agreed to conduct electricity and water to the property line, and the purchaser in each case entered into a contract with the water company for the continued furnishing of those commodities.  The facts of this case bring it squarely within the principles announced in *Thayer* v. *California Development Company,* 164 Cal. 119, [128 Pac. 21].  The Del Mar Water, Light & Power Company was organized for the purpose of selling water to the purchasers of real property from the South Coast Land Company.  It has consistently adhered to that purpose.  If the purchaser of land from a rival vendor desires water he may develop it by buying water-rights or by condemnation of water for himself and neighbors.  He may not demand a part of the private supply of this petitioner.  The determination that the petitioner is a public utility is erroneous and the railroad commission is without jurisdiction in the premises.  It has not been necessary to decide whether or not the commission has judicial power authorizing it to determine such a controversy as this.

We might rest our decision upon the foregoing discussion and conclusion, but we deem it proper to notice some of the other contentions of petitioner.  The commission had no power to order the building of a pipe-line across the land of the South Coast Land Company without compensation paid in advance.  (*Pacific T. & T. Co.* v. *Eshleman,* 166 Cal. 640, [137 Pac. 1138].)  This would amount to the taking of property without compensation.  It is argued that, assuming the public character of the petitioner, the order for the construction of the pipe-line is not void because condemnation proceedings might be necessary to carry it out.  The case of *Wisconsin etc. R. R. Co.* v. *Jacobson,* 179 U. S. 302, [45 L. Ed. 194, 21 Sup. Ct. Rep. 115], is cited as authority for this proposition.  In that case it was  held that the State Railroad and Warehouse Commission properly directed a railroad company to build a connecting track in such a way that to obey the order it would be necessary to go outside of the company's right of way and to condemn land for that purpose.  That

case was thus analyzed by Mr. Justice Henshaw in *Pacific T. & T. Co.* v. *Eshleman*, 166 Cal. 640, [137 Pac. 1131] :

"No court will question the justice of the Jacobson decision under the facts declared by the supreme court. But just criticism may be directed against an attempt to extend the decision beyond the court's own statement of the facts and the law, and beyond what could, by any possibility, have been in the minds of the jurists who pronounced it. The decision itself amounts to a declaration that under the authority of the state constitution or statute, a commission or court authorized to exercise the police power in the matter of the regulation of public utilities, may, in the proper case, order a physical connection to be made between the tracks of two nearby or intersecting railways, and that, though the execution of this order may involve the expenditure of money, and may result in the modification of the use of a portion of the railroad right of way over which the connecting track or tracks be carried, such an expenditure of money, when reasonable, and such a limited change of use of the right of way, on the demand of public interest or convenience, are but the outcome of a legitimate exercise of the police power, and do not constitute a taking of property without due process of law. Such is the decision and the whole of the decision of the Jacobson case."

The order which we are here considering was an attempted exercise of the power of eminent domain without compensation paid in advance. It was not an exercise of the police power by way of proper regulation. There was no showing, as in the Jacobson case, that the demands of the public justified the expenditure. Petitioner was ordered to construct at large expense a pipe-line over property belonging to another corporation in order that one customer might be served with water at twenty-five cents per thousand gallons. There was no showing of a demand by the public or any large portion thereof for water to be delivered at the boundary of Del Mar Heights Tract. True, it was ordered that the pipe should be large enough to serve the tract through which it was to pass —a part of the South Coast Land Company's property not yet on the market, but there was no direction that any one but Mr. Glass could demand the service. He was ordered to pay one-half of the cost of building the pipe-line and the

petitioner was to get in return for the other half the privilege of selling water to him. If the commission could decree such expenditure for one consumer why could it not provide a similar system of service for each successive applicant, leaving the petitioner the doubtful privilege of collecting a toll which could not compensate it for the enormous outlay in many years, if ever? Of course the commission would do no such unjust thing, but unless its order that water be delivered to Glass should be amended, no other person would have the right to share it. In any view of the matter, the order as made deprives petitioner of property without compensation.

It is therefore annulled.

Lorigan, J., concurred.

SHAW, J., concurring.—I concur in the conclusion that the order of the railroad commission should be annulled. The railroad commission has no power to compel a corporation which owns property in private right, and has not dedicated it to any public use, to apply it to a public use of any kind. But the commission has found as a fact that the Del Mar Company is operating a water system for compensation, and in its opinion it states as a fact that the said company is "a public utility." In view of the provision of section 67 of the Public Utilities Act that the findings of the commission on questions of fact shall be final and not subject to review, it cannot be held that this fact so stated in the opinion is not true, unless it should appear that the evidence on the subject was without conflict, so that the question would be purely one of law. I do not think that the question is necessary to the decision of this case.

The theory on which the commission appears to have proceeded is, in my opinion, fundamentally wrong, taking the facts as found by the commission itself. It appears from the record, and it is not disputed, that the Del Mar Company has a supply of water from which it has been for several years delivering water for compensation to persons who have purchased lots from the South Coast Land Company. Mr. Glass, the applicant in the proceeding before the commission, claimed that he was entitled to water from said Del Mar

Company as one of the public, or class, to whose use the water supply in charge of the Del Mar Company was dedicated. The commission found in favor of Glass and directed that the service be extended to him. The findings show that his land does not lie within the territory to which the Del Mar Company has been supplying or offering to supply its water. *Prima facie,* therefore, he has no right to share in the water. The conclusion of the commission that he is entitled to water from that company is based, so far as appears, on two facts. The first is that the articles of incorporation of the Del Mar Company confer upon it the power "to construct, buy, lease, and otherwise acquire and dispose of, hold, manage, control, and operate waterworks and distributing systems, ditches, canals pipe-lines and all other means or appliances for the acquisition, sale or distribution of water for domestic, irrigation and all other purposes; also to sell and distribute water for domestic, irrigation and all other purposes." The second is the following finding: "We find as a fact that the defendant Del Mar Water, Light & Power Company, is owning, controlling, operating and managing a water system for compensation within this state." The only other findings regarding the right of the applicant Glass state merely that the company has water in sufficient quantity to supply him in addition to the other persons already supplied, and that it is feasible to extend its plant by additional pipes to a point near enough to supply water to his land.

The fact that the articles of incorporation empower the company to engage in public service does not, of itself, constitute proof that it is engaged in such public service, or that it has dedicated such property as it may own to such public service. The powers given in the articles, as above quoted, do not necessarily imply an intention to engage in public service. One may acquire and hold a water supply and waterworks and thereby distribute and sell water for domestic use and irrigation or other purposes, without engaging in public service. It may make such sales to particular persons and in such a manner that the public would not be entitled to it. The mere fact, therefore, that a company having such powers has acquired a water supply and constructed waterworks constituting a system which it is operating for compensation does not necessarily justify the conclusion that it

is engaged in public service or that its water is dedicated to public use. The only effect of the adoption of such articles by a corporation is to give it the capacity to engage in such public service if it so desires. After having become incorporated in this manner, it has the power to engage in such service in the same sense that an individual has power to engage in such service. It may or may not do so, and until it does, it cannot be said to be subject to the jurisdiction of the railroad commission.

A finding that the Del Mar Company owns and is operating a water system for compensation and that it has a water supply sufficient in quantity to supply the applicant Glass, is not the equivalent of a finding either that it is engaged in operating its plant for public use, or, if it is, that Glass is one of the persons entitled as a beneficiary of such use. It is evident, however, from the opinion of the commission that it considered the finding that the company owns and operates "a water system for compensation," as the equivalent of a finding that it was engaged in applying its water to a public use. Treating this as its intended meaning, it is nevertheless clear that the commission is in error wth respect to the effect of such a situation. Its theory is, apparently, that if such company is engaged in public service at all and has applied any part of its water supply to public use, the whole of its property must be deemed to have been dedicated to the general public use and subject to the power of the commission; and further that if it has by its dedication, evidenced, either by direct declaration, or by contract, or by conduct, devoted its water supply to public use within a specified and limited territory, it has thereby put itself and all of its property within the jurisdiction and power of the commission, and that, on the complaint of one desiring water, who is not within the territory so specified and limited, the commission may compel the company to lay new pipes, enlarge its territory, and devote its entire supply to service for such additional territory as the commission may find in need of the water and for which the supply is adequate; in other words, that whenever the commission finds a corporation engaged in public service and applying a part of its property to such service, it may take the entire property of the corporation and compel the dedication thereof to public use and

direct its distribution to such portions of the public as the commission may deem best. There are parts of the Public Utilities Act which seem to be based on the same theory. We refer to section 5 and section 36. These sections, taken literally, seem to empower the commission to direct any public utility to extend its plant and enlarge the territory supplied by it in such manner as the commission shall judge advisable. But a proper interpretation of these provisions must be that they are limited in their application to such public service corporations as may have devoted their entire property to the use of the entire public, or to those which may have undertaken to supply a certain district, such as a city, and dedicated their property to that service and which afterward may have failed or refused to give to such district an adequate service, or failed or refused to extend the system and supply to parts of the district, when it was within its means to have done so and such extension would not be unreasonable. In such cases it would be entirely proper to give such a commission power to compel adequate service within the territory which the corporation has undertaken to serve and to compel any reasonable extension of the service to other parts of such territory. But even a constitutional declaration cannot transform a private enterprise, or a part thereof, into a public utility and thus take property for public use without condemnation and payment. The provisions of this act could not authorize the commission to compel such corporation to dedicate additional property to public use without additional compensation. When a corporation voluntarily devotes a part of its property to public use, it is to be presumed that it makes the dedication because it is satisfied with the return which it expects to receive, and in that way it is deemed to have been compensated for such dedication. But when it is forced to devote to public use additional property which it has not dedicated to public use, or is compelled to extend its service to supply uses or territory not embraced in the original dedication, it must, under our constitutional provisions, as a condition precedent, be compensated for the value of the new property taken or new use exacted. This may be done under the power of eminent domain. (*Pacific T. & T. Co.* v. *Eshleman,* 166 Cal. 640, [137 Pac. 1119].) The fact therefore that the company is the owner of and is

operating a water system for compensation, and the fact that it has the power by reason of its articles of incorporation to engage in public service, are by no means sufficient to authorize the conclusion that any particular person is a beneficiary of the use which such company is administering, or that any of the outlying territory is entitled to the service. It still remains necessary to ascertain the fact that such person is such beneficiary; that he is within the district and of the class, for which such dedication is made.

This fact the findings of the commission do not cover. It is not claimed that there is evidence that the water company has held out that its water was for sale to the outside public generally, or to any persons whatever, except those within the original Del Mar townsite and those within the subdivided lands of the land company. The commission does not so find. The selling of water to persons who come and take it away in barrels, is not evidence of a dedication of all the water owned by the seller to public use, nor of a dedication of any of it to the supply of any particular territory or area. In this state, where the territory needing water is vastly greater than the available water will supply, it is obvious that the district to be served from any source, or by any water service company must be limited in extent. Indeed, the same is substantially true of a water service anywhere. The supply is always limited and the territory to which it is to be served must likewise be limited, otherwise the amount served to each person might, by constantly increasing demands, be made so small that it would be of no use to any one. There can be no doubt, therefore, that the owner of a water supply may make a limited dedication of it to public use, confining the use to such territory as he sees fit. Nor can there be any doubt that one owning a water supply is not compelled to dedicate all of it to public use, or that he may dedicate a part of it, only, to such use, reserving the remainder for private purposes or for private sale or disposition as he sees fit. Accordingly, our decisions have recognized and have repeatedly declared the right of a water company to make such limited dedication and to decline to furnish its water to persons not within the area it has undertaken to serve. (*Leavitt* v. *Lassen Irr. Co.,* 157 Cal. 92, [29 L. R. A. (N. S.) 213, 106 Pac. 404]; *Thayer* v. *California Dev. Co.,* 164 Cal.

128, [128 Pac. 21]; *Price* v. *Riverside Land etc. Co.*, 56 Cal. 433; *Hildreth* v. *Montecito Creek Water Co.*, 139 Cal. 29, [72 Pac. 395]; 2 Wiel on Water-rights, 3d ed., sec. 1281; Lewis on Eminent Domain, 3d ed., secs. 254, 313.) The facts stated in the commission's findings and opinion do not show that the Del Mar Company ever offered its water for use to the territory in which applicant Glass lived, or to any persons other than those buying lots from the land company or residing within the "old town" surrounded by the territory subdivided by the land company. Its dedication of its water, if it has made any, extended no further than that. There has been no dedication of the water to the use of any portion of the public outside of that area.

For these reasons I am of the opinion that even if it should be conceded that the company is administering a public use, it does not appear that it is administering a use to which Glass is a beneficiary or that Glass comes within the class of persons to which its water has been dedicated. This being so, the commission has no power to compel an additional dedication or to compel an extension of the service beyond that to which it is already dedicated, and its order directing the extension and additional service was in excess of its authority and void.

Henshaw, J., Sloss, J., and Angellotti, J., concurred.

Rehearing denied.

In denying a rehearing the court in Bank filed the following opinion on May 11, 1914:

THE COURT.—In view of the principal grounds advanced in the petition, it is proper to say, in explanation, that in the decision of a case before the court in Bank the concurrence of at least four justices is necessary, and that any proposition or principle stated in an opinion is not to be taken as the opinion of the court, unless it is agreed to by at least four of the justices. The concurring opinion herein is the only one that is agreed to by the necessary number. That opinion contains the only propositions which are to be considered as decided. It does not hold that the plaintiff company is not

a public utility, or that it is not engaged in distributing water for public use; it merely declares that the land of the claimant, Glass, is not, *and is not found by the commission to be,* within the district, or area, to the use of which the water owned or controlled by that company is dedicated and, therefore, that he is not entitled to demand distribution thereof to his land.

The petition for a rehearing is denied.

* * * * * * * * *

ANGELLOTTI, J.—I concur in what is said in the foregoing as to the effect of the opinions heretofore filed in this case. Further consideration of the case, however, has made me very doubtful of the correctness of the judgment annulling the order of the railroad commission, especially in view of our limited powers of review under the constitution of this state. The importance of the questions presented is such that I would prefer to see further consideration given the case by the court before the decision becomes final, and therefore I do not concur in the order denying a rehearing.