[L. A. No. 6142. In Bank.—January 4, 1921.]

MOUND WATER COMPANY (a Corporation), et al., Appellants, v. SOUTHERN CALIFORNIA EDISON COMPANY (a Corporation), et al., Respondents.

[1] Water Corporations—Organization for Supply of Land Owners—Character of Corporation—Delivery of Water—Jurisdiction of Proceeding.—Where a water supply and water system owned and operated by a water company was acquired and constructed with money paid by certain land owners with the understanding that the system was to be so operated as to produce a certain quantity of water and that such water was to be distributed to their lands to the extent of their needs, and to no other lands until such lands were supplied, the water company did not thereby become a public utility, but an agent or trustee of the stock-

holders to the extent of the water to which they were entitled, and the superior court, and not the Railroad Commission, had jurisdiction of a proceeding brought by the company on behalf of its stockholders to compel the corporate successor of the company, who had agreed to furnish such stockholders a certain quantity of water at a certain rate, to perform its agreement.

[2] ID.—EVIDENCE—PUBLIC SERVICE CORPORATIONS—JUDICIAL NOTICE. Courts will not take judicial notice of the public service character of private corporations.

[3] ID. — STATUS OF WATER COMPANY — STATUTORY DEFINITIONS OF PUBLIC UTILITIES—WHEN IMMATERIAL.—The definitions of public utilities in the Public Utilities Act of 1911 and in the act of 1913 defining the conditions under which a water corporation shall be deemed to be a public utility subject to the jurisdiction of the Railroad Commission has no effect upon private property or water devoted to private use prior to the enactment of such statutes.

[4] PLEADING—DEFECTIVE ALLEGATIONS—SPECIAL DEMURRER.—Where a complaint states a cause of action as against a general demurrer, defects in the form of certain allegations should be raised by special demurrer.

APPEAL from a judgment of the Superior Court of Ventura County.   Grant Jackson, Judge Presiding.   Reversed.

The facts are stated in the opinion of the court.

Argabrite & Drapeau for Appellants.

Harry J. Bauer, Robert M. Clarke and Roy V. Reppy for Respondents.

SHAW, J.—The defendants demurred to the complaint on two grounds:

1. That the court had no jurisdiction of the subject of the action.

2. That the complaint does not state facts sufficient to constitute a cause of action.   The court below sustained the demurrer without leave to amend and thereupon gave judgment for the defendants.   The plaintiffs appeal.

The complaint contains five counts.   They each relate to the alleged failure of the defendant, Southern California Edison Company, hereinafter called Edison Company, to furnish water to or for the stockholders of the plaintiff, Mound Water Company, hereinafter called Water Company, for use

upon their several and respective tracts of land in accordance with an agreement made on February 1, 1907, between the Water Company and a corporation known as the Ventura County Power Company, transferring to the latter the water sources and system of distribution of the former under which agreement the Edison Company, as successor in interest of the Power Company, holds such rights as it has in the water in question. The plaintiffs Sexton and Harkey are holders of stock in the said Water Company and join as plaintiffs for that reason, claiming water rights under said agreement.

The complaint alleges the making of the agreement above mentioned between the Water Company and the Power Company and the subsequent execution of a deed by the Power Company to the Edison Company transferring to the latter all the rights of said Power Company under said agreement. The said agreement, and also certain so-called rules for distribution of water mentioned therein, are set forth as exhibits to the complaint and are expressly made a part thereof. The first count alleges that the Edison Company in June, 1918, refused to deliver any water to the plaintiff George S. Sexton, to which it is alleged he was entitled under said agreement and which he demanded. The second count alleges a similar refusal to deliver water to the plaintiff Harkey for use on his land under said agreement. The third count alleges that the Water Company on behalf of its stockholders, on June 1, 1918, demanded of the Edison Company that it should deliver to said stockholders, naming them, certain quantities of water specified for each, amounting to 150 inches, as the same should be demanded by said stockholders, and that said company failed and refused to furnish the water in accordance with said notice. The fourth count alleges that the present daily capacity of said water system was no greater than a constant daily flow of ninety miner's inches of water, that said Edison Company proposed to supply therefrom to one Chrisman, who was not a stockholder of said Water Company, water sufficient for seventy-seven acres of land that was not entitled to water from said system, all of which was in violation of the said agreement; that the needs of the stockholders of the Water Company will require a constant daily flow of 150 miner's inches for the season of 1918, and the same in future years, and that the result would be that the

stockholders of the Water Company would be deprived of water to which they were entitled from said system. The fifth count, in effect, alleged that the Edison Company, in violation of said agreement, had for the year preceding July 1, 1918, failed and neglected to develop more than a constant daily flow of ninety miner's inches of water from said water system; that the same was capable of producing a constant daily flow of more than 150 miner's inches, that the said plaintiff and its stockholders entitled to the use of said water, would, by reason of nonuser, lose all rights to water from said system in excess of the constant daily flow so maintained by said Edison Company, and that the said stockholders entitled to the water needed the full amount of 150 miner's inches to properly irrigate their lands upon which they are entitled to use said water. The prayer of the complaint is that the defendants be restrained from delivering or disposing of any waters of said water system to said Chrisman or to any person, other than to said Water Company, for the use and benefit of its stockholders upon their respective tracts of land set forth in the agreement referred to, until said defendants shall first have delivered the water necessary for the use and benefit of such stockholders, to wit, a constant daily flow of 150 miner's inches as provided in said agreement, and that said Edison Company, by mandatory injunction, be ordered and directed "to develop from said Mound Water System not less than a constant daily flow of 150 miner's inches of water for the use and benefit of the stockholders of said Mound Water Company."

The theory of the complaint is that the waters which the respective stockholders claim the right to receive are private property, not dedicated to public use, that under the agreement referred to said stockholders have the right to receive the same for use upon their respective tracts of land, and that the Water Company, as agent and trustee for them, has the right to maintain this action in their behalf. The soundness of this theory obviously depends upon the terms of the agreement set forth in the complaint.

The agreement purports to be tripartite in character. The Mound Water Company was named as party of the first part, Ventura County Power Company, as party of the second part, and twenty-seven persons described as stockholders of the Mound Water Company as parties of the third part. Said

stockholders, however, did not sign the agreement, but the covenants of the agreement appear to have been made in their behalf and for their benefit.

It first recites that the parties of the third part owned all of the issued stock of the Water Company and hold one share of stock for each acre of their lands, respectively. It then sets forth the holdings of stock by each one of the stockholders, respectively, naming them, and describes the respective tracts of land owned by each stockholder, stating the number of acres in each tract. The number of acres correspond to the number of shares of stock owned by such stockholder. Then follows a recital setting forth the terms of the resolution adopted at a stockholders' meeting of said Water Company, authorizing the execution of the agreement. It then declares that the Water Company, in consideration of the covenants and agreements of the Power Company therein set forth, grants, sells, assigns, and transfers unto the Power Company all of the property embraced in and pertaining to the water system of the said Water Company, describing it at length, including the water sources and supply, and that in consideration thereof the said Power Company thereby granted, sold, assigned, and transferred unto the Water Company for the use of its said stockholders and their successors in interest in the lands thereinbefore described as belonging to them and for use upon said lands, 150 miner's inches of water from said system, to be delivered by said Power Company on said lands at twenty-five cents per miner's inch of the water furnished and used by said stockholders, respectively. It further declared that said 150 inches of water so granted to said Water Company should be appurtenant to the aforesaid lands of said stockholders and should be an absolute right in the Water Company, that said stockholders were to have said 150 inches of water so delivered on said lands from the present water system, and that said water should be so delivered by said Power Company to said respective stockholders "in accordance with the rules for distribution now obtaining in said party of the first part for the distribution of water to its stockholders at such times and in such quantities as said [stockholders] may respectively in writing request; it being understood that said 150 miner's inches of water in this indenture granted to said party of the first part shall constitute and be a part of such water

so to be delivered to said stockholders." There was a further agreement by the Power Company to deliver to said stockholders, water for stock and domestic purposes on the said lands at the price of $25 a year for each one hundred thousand gallons of water so supplied. The Power Company further covenanted to maintain and keep in repair and use, the system so obtained, and that no other or different system should be used to supply water to said stockholders without the consent of the Water Company and that it would so use and maintain the water rights and property so transferred to it that no forfeiture or diminution should be permitted to arise or happen, and so that no adverse right or rights should be permitted to accrue as against the right of the said Power Company and said Water Company therein or thereto. It further appears by said agreement that the Water Company was organized and exists for the purpose of furnishing and supplying to its stockholders water for use on their lands and that the stockholders by and through said Water Company had expended more than seventy-five thousand dollars in the purchase of the water-bearing lands, and water rights, and in the construction of the works for the delivery thereof to the said lands, which constituted the water supply, distributing system, and works so transferred to said Power Company.

The rules for water distribution referred to in said agreement and made a part of the complaint are contained in the by-laws of said Water Company. They provide that each share of water stock shall be definitely allotted to an acre of land and that no transfer of stock should be made so as to alienate the water from the land to which it was originally applied, and that no stockholder shall own more shares of stock than he has acres of land. And, further, that every stockholder should receive his share of water in a certain order specified therein, naming each person and giving his consecutive number. Also that no stockholder should receive more than six inches of water for each acre of his land, without the consent of the majority of the stockholders, and that an annual assessment of six cents per share should be paid by the stockholders.

From this statement it appears that the water supply and water system owned and operated by said Water Company in 1907, when said agreement was made, was acquired and

constructed with money paid to the company for that purpose by its stockholders; that this was done under an arrangement and with the understanding that the system was to be operated by said Water Company to produce from said sources water to the extent of 150 miner's inches and distribute the same by means of the pipes and conduits of the system to the said stockholders, to the extent of their needs, for use on the lands described in the agreement, to each stockholder in the proportion which the acreage of his land bore to the total acreage of all the lands described, and to no other lands until after those lands were supplied. Also that such rights were appurtenant to the respective tracts of land. This water and the system of distribution thereof were therefore held in trust by the Water Company for the benefit of its stockholders, and, until said lands were supplied, for the stockholders only. The Water Company was therefore nothing more or less than an agency whereby the stockholders procured the water for use on their own lands, exclusively, in the proportions stated. Nothing in the agreement or in the allegations of the complaint indicates any intention on the part of said Water Company or its stockholders to devote any part of said 150 inches to public use. As this trust was impressed upon the properties when it was conveyed to the Edison Company, the trust and the corresponding duty remained upon it thereafter and that company is bound to perform it.

[1] It is a well-established proposition that a water system of this character, so owned and controlled, is not a public utility, and that the water owned, held, and used in that manner is not dedicated to public use or subject to control by public authority. The Water Company was of the class designated in our decisions as a mutual water company. The case is not distinguishable in any material particular from *McFadden* v. *Los Angeles County,* 74 Cal. 571, [16 Pac. 397]. That was a proceeding in mandate to compel the board of supervisors to fix the water rates to be charged by the Anaheim Union Water Company. The company was a corporation formed for the purpose of supplying water to the owners of certain lands. The waters it owned were acquired and held for use on the lands of stockholders only and not for sale, distribution or rental. No water was to be sold or used by anyone except the stockholders, or was to be used on land not

covered by stock of the company. It was not intended that the water so held was to be sold, rented, or used in any way to accumulate funds with which to pay a dividend. The court held that the board of supervisors was not authorized to fix rates under the constitution (art. XIV, sec. 1), or under the act of 1885 (Stats. 1885, p. 95). It was said: "An individual can certainly acquire water to be used on his own land. With such a use the board of supervisors would have nothing to do. We know of no reason why individuals cannot associate themselves, take on a corporate form, and acquire water to be used on their own land. When this is done, we are of the opinion that a board of supervisors can have no more power over the rates to be paid by the stockholders than in the case of individuals." This opinion was reaffirmed in *McDermott* v. *Anaheim etc. Co.,* 124 Cal. 114, [56 Pac. 779]. In that case it was held, with respect to the same corporation, that a stockholder could maintain an action to enjoin the corporation from supplying water to persons who were not stockholders of the company, where it was made to appear that the effect would be to deprive the stockholders of a portion of the water necessary for their use on their lands. The same general doctrine was announced in *Barton* v. *Riverside Water Co.,* 155 Cal. 518, [23 L. R. A. (N. S.) 331, 101 Pac. 790], and *Hildreth* v. *Montecito Water Co.,* 139 Cal. 29, [72 Pac. 395]. In the latter case it was said that the constitutional provision did not "cover the proposition that all water which is distributed among a number of persons is, from that fact alone, to be considered as devoted to a public use." There are many cases in which the rights served by corporations of this character have been considered by this court, and in none of them is there any suggestion that such disposition or distribution constitutes a public use. The cases are collected and cited in *Thayer* v. *California Development Co.,* 164 Cal., on pages 135 and 136, [128 Pac. 28]. In that case the subject was elaborately considered, all the cases were reviewed, and it was held that where a water company was organized for the purpose of selling water to certain designated persons selected by it at the time of its organization, or to its stockholders alone for use on their lands, and to no other person, such sale and distribution of water did not constitute a public use. We refer to that case for a more complete discussion of the subject.

In the respondents' brief it is suggested that the Water Company had sold some of the water to persons other than stockholders, presumably for profit, and from this it is argued that the company must have been selling water for public use. Even if this were shown by the complaint, it would not affect the right to the water necessary for the lands of the stockholders described in the agreement. Under the trust shown therein and by the terms of the by-laws it would have no right to dispose of any part of the 150 miner's inches to public use or at all, to the detriment of its own stockholders. That portion of the water was set apart for their use, and its conduct in selling it contrary to their rights would not give it the right to continue to do so or make it a public utility as to that water, without the consent of its stockholders. Furthermore, whenever there was a surplus, either from an excess of supply over the needs of the stockholders or from the fact that the stockholders at particular times did not need all of the 150 inches, while the company might perhaps dispose of such surplus to whoever should apply for it and would be thereby devoting such surplus to public use, it would not affect the part of the water appropriated to the preferred private use of the stockholders. It has been held that a water company may devote a part of its water supply to private use and the excess thereof to public use, or it may dedicate a portion of its water to a public use, and reserve the remainder, if any, for some private use, although it cannot, after dedicating any part to public use, transform any of that part into a private use, without the consent of the proper public authority (*Del Mar etc. Co.* v. *Eshleman,* 167 Cal. 666, 680, [140 Pac. 591, 948]; *Leavitt* v. *Lassen Irr. Co.,* 157 Cal. 86, [29 L. R. A. (N. S.) 213, 106 Pac. 404]; *Thayer* v. *California Development Co., supra*). But really these questions are not before us, for the fact does not appear on the face of the complaint and no controvertible fact not alleged can be considered on demurrer.

It is further suggested that in a certain proceeding before the Railroad Commission in the matter of an application of the Ventura County Power Company for an increase in rates for the water so obtained by it from said Water Company, the commission decided that the Ventura County Power Company held that water for public use, but denied its application to increase the rates. It is argued that this was an adjudication

as to the character of the Power Company and that when it conveyed the water system to the Edison Company the water remained subject to the public use. It is unnecessary here to determine the effect of that decision. The court does not take judicial notice of it, and the question can only be raised by an answer setting up the defense of former adjudication. It may be suggested, however, that it does not appear from anything said in the briefs that the plaintiffs in the present action were parties to the proceeding before the Railroad Commission.

[2] It is also suggested that the court will take judicial notice of the fact that the Edison Company is a public service corporation, and, from this fact, that upon its acquisition of this water the same became devoted to public use, even if it were not so previously. There is nothing in the complaint to show that the Edison Company was a corporation of that character. The courts do not take judicial notice of such matters. Furthermore, even if it was of that character it could not, under the allegations of the complaint, convert the private use to which the water was subjected when it obtained title thereto, into a public use such as that claimed by respondent unless the stockholders of the Water Company, who were interested in the private use and entitled thereto, had consented thereto. (*Del Mar etc. Co.* v. *Eshleman,* 167 Cal. 666, [140 Pac. 591, 948].) No such consent appears in the complaint. If the facts exist, they must be set up by way of defense before the defendants can take advantage thereof.

[3] Reference is made to the definitions of public utilities in the Public Utilities Act of 1911 and in the act of 1913, defining the conditions under which a water corporation shall be deemed to be a public utility subject to the jurisdiction of the railroad commission. (Stats. 1913, p. 84). The status of this water depends upon the terms of the agreement set forth in the complaint. That was executed in 1907. It should require no argument to establish the proposition that a statutory definition of a public utility, or of the conditions under which water shall be deemed to have been devoted to public use, could have no effect whatever upon private property or water devoted to private use prior to the enactment of the statute. (*Del Mar etc. Co.* v. *Eshleman,* 167 Cal. 680, [140 Pac. 591, 948].)

It follows from what we have said that the railroad com- mission had no power or authority over the water or the water system, so far as the water necessary for the use of said stock- holders of the Water Company was concerned, and that the superior court had jurisdiction of the action. It appears that the learned judge of the court below sustained the demurrer upon the theory that the jurisdiction was exclusively in the commission. In this we are satisfied that he erred.

[4] As against a general demurrer, the complaint states a cause of action against the defendants. Some of the allega- tions may be defective in form, but it is clear that the court below did not sustain the demurrer on that ground. Defects of that character should have been raised by special demurrer and, if well taken, the plaintiff should have had leave to amend, if so advised.

The judgment is reversed.

Olney, J., Wilbur, J., Sloane, J., Lennon, J., Angellotti, C. J., and Lawlor, J., concurred.