[L. A. No. 7928.  In Bank.—November 12, 1924.]

## SOUTHERN CALIFORNIA EDISON COMPANY (a Corporation), Petitioner, v. RAILROAD COMMISSION OF THE STATE OF CALIFORNIA et al., Respondents.

[1] PUBLIC UTILITIES—RIGHT TO ENGAGE IN PUBLIC SERVICE—ARTICLES OF INCORPORATION.—The mere fact that its articles of incorporation empower a corporation to engage in public service does not of itself constitute proof that it is engaged in public service or that it has dedicated such property as it may own to such service.

[2] ID. — WATER COMPANIES — SALE AND DISTRIBUTION OF WATER — ENGAGEMENT IN PUBLIC SERVICE.—One may acquire and hold a water supply and waterworks, and thereby distribute and sell water for irrigation or other purposes, without engaging in public service; and the mere fact, therefore, that a company having such powers has acquired a water supply and constructed waterworks constituting a system, which it is operating for compensation, does not necessarily justify the conclusion that it is engaged in public service.

[3] ID.—ARTICLES OF INCORPORATION—CAPACITY TO ENGAGE IN PUBLIC SERVICE.—The only effect of the adoption of articles of incorporation authorizing the development, distribution, and sale of water, and the acquisition of such real estate as may be incidental to such purposes, is to give the corporation the capacity to engage in the public service if it desired to do so. It may or may not engage in such service, and until it does it cannot be said to be subject to the jurisdiction of the state Railroad Commission.

[4] ID.—BY-LAWS OF MUTUAL WATER COMPANY—PRIVATE STATUS OF UNAFFECTED BY—INTENT.—Assuming it to be a fact that the by-laws of a company declaring it to be a mutual water company were irregularly adopted, such fact in no manner affects the private character of the company, where it does not in any way show an intent to dedicate the waters of the company to public use but, on the contrary, negatives any such intention.

[5] ID. — PRIVILEGE TO LAY WATER-MAINS IN HIGHWAYS — COMPANY NOT CONVERTED INTO PUBLIC UTILITY.—The mere granting of the privilege by the supervisors of a county to a mutual water company of the use of certain roads for the purpose of laying its water-mains did not of itself convert the company into a public utility. The resort by the company to this necessary privilege should not, and does not, *ipso facto* constitute a dedication of the

---

1.  See **6 Cal. Jur.** 606.

system to a public use and thus convert a private enterprise into a public utility.

[6] Id.—Grant of Privilege to Lay Water-mains in Highways—Power of Board of Supervisors.—The supervisors of a county could lawfully, by virtue of their control over highways, grant the privilege to a water company to lay its water-mains in certain public highways; and the mere fact that the privilege was given for a private purpose did not constitute it an unlawful use of the highways, section 4041 of the Political Code, which defines the powers of boards of supervisors, being broad enough in its terms to include such action.

[7] Id.—Exercise of Privilege by Water Company—Effect of.—The exercise by the water company of the privilege granted by the supervisors to lay its water-mains in certain public highways did not in itself amount to a declaration by the company that it did not consider itself a mutual company but rather a public utility.

[8] Id.—Sale of Water System—Contract—Construction.—Under a contract between a mutual water company, a power company, and the stockholders of the former, whereby the water company sold its water system to the power company, and the latter in turn granted and conveyed to the water company, for the use of its said stockholders in certain described lands, a stated quantity of water, to be delivered through said system at a specified rate, which quantity was to be appurtenant to the lands of said stockholders and be an absolute right in them and the water company, the relation between the water company and its stockholders was that of trustee and beneficiaries, and the successor of the power company took the properties subject to the trust impressed thereon, and the said stockholders retained the private rights that they had in the system at the time of the sale to the power company.

[9] Id.—Disposition of Surplus Water—Acquiescence of Stockholders Claiming Private Rights—Contracts.—The contract in question having provided that the stockholders of the water company might take and pay for less than the quantity of water fixed by the contract, the fact that such stockholders acquiesced in the practice of the power company of disposing to consumers not stockholders surplus water arising from excess of supply over the needs of said stockholders or from the fact that the stockholders at times did not need all of said fixed quantity cannot constitute an estoppel between them and the power company, or its successor, to deny that the water company has been dedicated to public use.

[10] Id.—Proceeding Instituted by Stockholders Before Railroad Commission—Effect Upon Their Rights—Evidence.—The fact that the stockholders of such water company instituted a proceeding before the Railroad Commission to enjoin the diversion of the

quantity of water accorded to them by the contract in question did not preclude them from insisting upon the private character of their water rights, where the complaint before the Railroad Commission was filed after a complaint, filed in the superior court against the successor of the power company asking the same relief, had been held by that court not to state a cause of action upon the ground that jurisdiction of the matter lay in the Railroad Commission, and, upon reversal of such ruling on appeal, the Railroad Commission was requested by the water company to dismiss the complaint before it, which it did ultimately dismiss.

[11] ID.—CONTRACT—ALLEGED UNCERTAINTY—CONSTRUCTION.—There is no uncertainty in the provision of the contract in question by which the power company agreed to deliver the water "at and for the rate and price of twenty-five cents per miner's inch of such water so delivered," where the contract contains a definition of miner's inch, namely, "a quantity of water equal to a constant flow of 13,000 gallons per 24 hours," it being apparent from the insertion of this definition in the contract that what the parties meant by miner's inch was a definite quantity of 13,000 gallons, and this being also the practical construction given to the contract by the parties thereto and their successors for the past fifteen years and the basis upon which bills for water service were rendered.

---

(1) 40 Cyc., p. 774.   (2) 40 Cyc., p. 774.   (3) 40 Cyc., p. 774. (4) 40 Cyc., p. 774.   (5) 40 Cyc., p. 774.   (6) 15 C. J., p. 457, sec. 103.   (7) 40 Cyc., p. 774.   (8) 40 Cyc., p. 779.   (9) 40 Cyc., p. 779. (10) 40 Cyc., p. 779.   (11) 13 C. J., p. 545, sec. 516; p. 532, sec. 489.

PROCEEDING in Certiorari to annul an order of the Railroad Commission exempting certain stockholders of a water company from payment of rates. Petition dismissed.

The facts are stated in the opinion of the court.

Roy V. Reppy, E. W. Cunningham and Robert M. Clarke for Petitioner.

Hugh Gordon and Carl I. Wheat for Respondent Railroad Commission.

Drapeau, Orr & Gardner for Respondent Mound Water Company.

TYLER, J., *pro tem.*—*Certiorari* to review and annul an order and decision of the Railroad Commission exempting

certain stockholders of the Mound Water Company from payment of the rates therein found to be just and reasonable.

The proceeding is in effect one in *mandamus* to compel the Commission to take jurisdiction over such service and to make its order applicable to certain exempted persons—stockholders in an irrigation company which had theretofore conveyed its water system to the petitioner's predecessor—as well as to the other consumers served by the petitioner.

The sole question presented is as to whether or not certain waters have ever been devoted to a public use. If they have, the Commission has jurisdiction and must act; if not, the controversy is one for the courts.

The opinion of the Commission was based upon its interpretation of the decision of this court rendered in *Mound Water Co.* v. *Southern California Edison Co.*, 184 Cal. 602 [194 Pac. 1014], in which it was held that the water system conveyed by the plaintiff therein to the Ventura County Power Company, defendant's predecessor, had not been devoted to public use; and it is the claim of petitioner that the Commission, in reaching its conclusion, misunderstood the scope and effect of such decision.

The rights of the parties hereto have been the subject of extended litigation before the Commission and the courts, and a brief review of these controversies is necessary for a complete understanding of the case.

The Mound Water Company was incorporated in 1904. The declared purpose of the corporation was to develop and distribute water for irrigation purposes. After its incorporation the company passed certain resolutions declaring it to be a mutual company. Application was made to the board of supervisors of the county of Ventura for a franchise to lay its mains in certain public highways within the county. Pursuant to this application the company was granted a special privilege for a certain time to lay and maintain its conduits across and under certain public roads. The corporation then proceeded to acquire water-bearing land, to sink artesian wells and install a pumping plant and pipe-line several miles in length at a cost of about $75,000. It subsequently adopted a by-law providing in substance that the water of the company should not be supplied to land other than that entered in the company's books and according to the plan of the district, and that each share of stock

should be definitely allotted to an acre of land as per plan and specification of stockholders, and that no transfer of stock should be made so as to alienate the water from the land to which it was originally applied. It further provided that no stockholder should own more shares than he had acres of land within the district. Provision was then made for the sale of water for irrigation purposes, preference being given to original shareholders when this could be done without injury to the right of any stockholder, and the rate for water so sold was fixed at fifty cents per miner's inch for stockholders and eighty cents for nonstockholders.

On February 1, 1907, the company entered into a contract with the Ventura County Power Company, predecessor in interest of the petitioner herein. The agreement is tripartite in character, the parties thereto being the Mound Water Company, the Ventura County Power Company, and the stockholders of the Mound Water Company. It recites in substance that the stockholders of such company own all of the issued stock of the company, and that they hold one share of stock for each acre of their lands respectively. It then sets forth the holdings of stock by each one of the stockholders, naming them, and describes the tracts of land owned by them respectively, stating the number of acres in each tract. It then declares that the Mound Water Company, in consideration of the covenants and agreements of the power company therein set forth, grants, sells, assigns, and transfers unto the power company all of the property pertaining to the water system, including the water sources and supply, and that in consideration of the covenants and agreements therein contained, together with the sum of $34,066.53, the power company grants and conveys unto the water company, for the use of its said stockholders and their successors in interest in the described lands 150 miner's inches of water, to be delivered through said system at the rate of twenty-five cents per miner's inch of water used and furnished. It further declared that the 150 inches so granted should be appurtenant to the lands of said stockholders, and should be an absolute right in them and the Mound Water Company.

It is this contract which was under consideration before this court in the case of *Mound Water Co.* v. *Southern California Edison Co., supra.* That action was commenced on

July 1, 1918, in the superior court of Ventura County by the Mound Water Company and others against the Southern Edison Company. The complaint alleged that the Mound Company was a mutual water company; that its stockholders were the owners of 150 inches of water appurtenant to their lands reserved in them by contract; that the Edison Company was about to divert part of this 150 inches of water, and the complaint prayed for relief by way of injunction. Demurrer was interposed and sustained, and an appeal therefrom taken to this court resulted in the decision above referred to. Prior to its rendition, and on July 11, 1918, the Mound Company and other plaintiffs named in the superior court action commenced a proceeding before the Railroad Commission against the Edison Company (case No. 1257). The complaint was based upon the contract above recited and was in substance the same as the complaint filed in the superior court. This application was subsequently dismissed by the Commission.

On November 5, 1919, the Edison Company filed its application with the Commission for increase of rates for water served by its Mound water system (application No. 5104). In this proceeding the stockholders of the Mound Company appeared specially to contest the jurisdiction of the Commission as to the 150 inches of water appurtenant to the lands of said stockholders and granted to them under the contract above recited. The Commission made its order therein by which it increased rates for certain water service by petitioner, but declared that such water rates would not apply to consumers who were stockholders of the Mound Water Company, on the ground that the service to such consumers was and had been decided by this court to be private rather than public service and over which the Commission possessed no jurisdiction. The Edison Company thereafter filed a petition for rehearing, alleging that the Commission had erred in adhering to the decision of this court in the case above mentioned. The contention was made that the decision was upon demurrer only, and the facts relied upon before the Commission were not all before the court in that case. The Commission granted the petition and a rehearing was had, but no new evidence bearing upon the matter was presented. It appeared that an answer had been filed in the proceeding pending in Ventura County, and the

case was then ready for trial on its merits, awaiting only the decision of the Commission.

This proceeding was thereupon instituted. The Railroad Commission and the Mound Water Company join in a demurrer thereto, and urge that as the substance of all the facts is set forth in the petition and not disputed by the Commission, the issue can be determined upon the demurrer in response to the order to show cause.

In so far as the contract is concerned that instrument has been fully considered by this court in the former decision above mentioned, where it was held that the water service in question was a private right and that jurisdiction resided in the superior court to enforce its terms.

The facts stated in the pleading and upon which petitioner relies to sustain its contention that the former decision is not controlling are as follows: It is claimed that petitioner introduced certain evidence to justify a finding that the Mound Company was a public utility as to its stockholders, and that this evidence, being unrebutted, compelled a finding as a matter of law that the company was a public utility notwithstanding that the contract had between the parties standing alone created a private right in the waters. To support this contention it is first pointed out that the articles of incorporation of the company were introduced in evidence wherein it appears that the purposes of the corporation "are to develop, distribute and sell water, and to acquire such real estate as may be incidental to the purposes of this corporation." It is claimed that this authorization as to the character of the business contains no suggestion of a limitation to serve stockholders of the company only.

There is no merit in this contention. [1] The mere fact that its articles of incorporation empower a corporation to engage in public service does not of itself constitute proof that it is engaged in public service or that it has dedicated such property as it may own to such service. [2] One may acquire and hold a water supply and waterworks, and thereby distribute and sell water for irrigation or other purposes, without engaging in public service. The mere fact, therefore, that a company having such powers has acquired a water supply and constructed waterworks constituting a system, which it is operating for compensation, does not necessarily justify the conclusion that it is engaged in public

service.  [3]  The only effect of the adoption of such articles by the corporation is to give it the capacity to engage in the public service if it desired to do so.  It may or may not engage in such service, and until it does it cannot be said to be subject to the jurisdiction of the state Railroad Commission.  (*Del Mar Water Co.* v. *Eshleman,* 167 Cal. 666 [140 Pac. 591, 948].)

[4]  It is also contended that the by-laws of the company declaring it to be a mutual company were irregularly adopted.

Even assuming this to be true, it in no manner affects the situation, for it certainly does not in any way show an intent to dedicate the waters to public use but, on the contrary, negatives any such intention.

The next contention of the petitioner is that the application to the board of supervisors of Ventura County for a franchise to lay its water-mains in certain public highways and the acceptance and exercise of the privilege granted, constituted a clear and unambiguous declaration by the Mound Water Company that it was undertaking as a public utility to serve the inhabitants of the county in the neighborhood of its system, and that it did not consider itself a mutual water company.

[5]  Upon this question the Railroad Commission concluded that the mere granting of the privilege by the supervisors of the use of certain roads did not of itself convert the water company into a public utility.  And this must be so, for otherwise there could be no such thing as a mutual company of any character where conditions required that in the operation of pipe-lines in its business it avail itself of the use of highways at certain points.  The resort by a company to this necessary privilege should not, and in our opinion does not *ipso facto* constitute a dedication of the system to a public use and thus convert a private enterprise into a public utility.  [6]  The supervisors could lawfully, by virtue of their control over highways, grant the privilege in question; and the mere fact that the privilege was given for a private purpose did not constitute it an unlawful use of the highway.  [7]  Section 4041 of the Political Code defining the powers of boards of supervisors is broad enough in its terms to include such action; and the exercise of the privilege granted did not in itself amount to a declaration

by the company that it did not consider itself a mutual company but rather a public utility.

[8]   Petitioner presents the further argument that a dedication of the water to public use resulted from the sale of the system to the Ventura Company, which company claimed to own all the waters in the Ventura River and had acquired other water rights, and had formulated plans for the development of an extensive water system serving the city of Ventura and certain territory north of it.   Other activities of the company are set forth in the petition which are claimed to indicate the public character of this company; and it is argued that these facts furnish clear evidence that the Mound Water Company and its stockholders were familiar with the plans and purposes of the Ventura Company, and indicate an intent on the part of the stockholders to give up their right to receive water other than as public consumers of the Ventura Company.

The intent of the contract received consideration in the former opinion of this court.   It was held that nothing in the agreement indicated any intention on the part of the water company or its stockholders to devote any part of the 150 inches to public use; that the relation existing between the water company and its stockholders was that of trustee and beneficiaries; that such trust was impressed upon the properties when conveyed to the petitioner and remained upon them thereafter, and that the company was bound to recognize it and perform the obligation arising therefrom. The clear intent is expressed by this contract, which recites that the Mound Water Company existed for the purpose of supplying its stockholders with water for domestic use and irrigation, and to retain for such stockholders the 150 inches appurtenant to their lands.   The facts do not indicate any intent on the part of the stockholders of the Mound Company to give up any private rights that they had in the system, but, on the contrary, as held in the former opinion, that they retained the same.

[9]   The further claim is made that after the purchase of the system the Ventura Power Company (petitioner's predecessor) the company began to serve therefrom many consumers not stockholders of the Mound Company and that this practice was continued by the Power Company and later by the Edison Company when the flow from the system was

less than 150 inches, and no attempt was made by the Mound Company or its stockholders to stop this delivery until the superior court action commenced in 1918. The acquiescence in this use and failure to protest the sales is claimed to constitute an acquiescence resulting in the dedication of the system to public use.

We see no merit in this contention. While the stockholders of the Mound Company were entitled to receive 150 inches of water under the conditions stated, the contract specially provided that they might take and pay for less. This question also has received consideration by this court in the former decision. It is there held that whenever there was a surplus either from excess of supply over the needs of stockholders or from the fact that the stockholders at times did not need all of the 150 inches, the company could dispose of the same, but such disposition on its part did not affect the preferred private use of the stockholders; from which it necessarily follows that their acquiescence in the practice of the Ventura Power Company to thus dispose of such surplus water cannot constitute an estoppel between them and the company to deny that the Mound Water system has been dedicated to public use.

[10] It is next insisted by the petitioner that the stockholders of the Mound Water Company have precluded themselves from insisting upon the private character of their water rights by reason of the proceeding instituted by them before the Railroad Commission in July, 1918, already referred to and by which they sought certain relief from the Commission with respect to their aforesaid water rights, citing in support of this contention *Franscioni* v. *Soledad Water Co.*, 170 Cal. 221 [149 Pac. 161], *Palermo L. & W. Co.* v. *Railroad Com.*, 173 Cal. 380 [160 Pac. 228], *Van Hoosear* v. *Railroad Com.*, 184 Cal. 553 [194 Pac. 1003], and *Brewer* v. *Railroad Com.*, 190 Cal. 60 [210 Pac. 511]. This complaint was filed before the Commission after a complaint filed in the superior court against the petitioner asking the same relief had been held by that court not to state a cause of action upon the ground that jurisdiction of the matter lay in the Railroad Commission. This court, as already mentioned, reversed this ruling of the superior court, whereupon the Mound Water Company requested the Commission to dismiss its complaint before that body. The Com-

mission, although it at first denied this request, did ultimately dismiss the complaint. We are quite clear that these facts are not sufficient to bring this case within the rule laid down in the cases cited. In each of the latter there had been not only a submission to the jurisdiction of the Railroad Commission or other public rate-making body, but the matters had proceeded to a decision, and the decision acquiesced in and action taken thereunder for long periods of time—a situation very different from that here presented.

[11] It is finally contended that the contract of 1907 between the Ventura Power Company, the Mound Water Company, and the stockholders of the latter is void for uncertainty, and that consequently said stockholders can only receive water from the petitioner as public utility consumers.

The uncertainty alluded to is said to be found in that provision of the contract by which the Ventura Power Company agreed to deliver the water "at and for the rate and price of twenty-five cents per miner's inch of such water so delivered." The contract contains a definition of miner's inch, namely, "a quantity of water equal to a constant flow of 13,000 gallons per 24 hours." It is apparent from the insertion of this definition in the contract that what the parties meant by miner's inch was a definite quantity of 13,000 gallons. This is the practical construction given to this contract by the parties thereto and their successors for the past fifteen years and the basis upon which bills for water service were rendered. We find no merit in this final contention of the petitioner.

It follows from these conclusions that the demurrer of the respondents should be sustained. It is so ordered and the petition dismissed.

Lawlor, J., Seawell, J., Shenk, J., Lennon, J., and Waste, J., concurred.

Myers, C. J., deemed himself disqualified and did not participate in the foregoing opinion.