[L. A. No. 14361.   In Bank.—December 31, 1935.]

WALLACE RANCH WATER COMPANY (a Corporation), Respondent, v. FOOTHILL DITCH COMPANY (a Corporation), Appellant.

McFadzean & Crowe, Farnsworth, Burke & Maddux and James K. Abercrombie for Appellant.

H. B. McClure, Freston & Files and James A. McLaughlin for Respondent.

SHENK, J.—Plaintiff, a mutual water company, brought this action to quiet its title as against defendant, a public utility, to three cubic feet of water per second, diverted from the Kaweah River, and to quiet its title to a one-third interest in the Foothill Ditch by which the water is diverted from the river to the Wallace ranch. Only that portion of the ditch from the point of diversion in the river to plain-tiff's place of use is involved in this action, plaintiff claiming no interest in the ditch beyond the Wallace ranch. The an-

swer of defendant admits plaintiff's ownership of the water right and admits that plaintiff has the right to have its water flow through the ditch, but alleges that the sole ownership of the ditch rests in defendant and that plaintiff has no interest therein. Other issues were incidentally raised by the pleadings, but the main question presented for determination to the trial court was whether plaintiff has any interest in the Foothill Ditch.

The trial court held that plaintiff has a perpetual easement in the ditch to convey its water to its properties. On this appeal, defendant makes three main contentions:

1. First, it is contended that there is an irreconcilable conflict and a fatal inconsistency in the findings of fact.

2. Second, defendant contends that by certain provisions of the judgment hereafter referred to, the trial court, contrary to the provisions of section 67 of the Public Utilities Act (Stats. 1915, p. 115, as amended) has, in effect, nullified certain orders of the railroad commission.

3. In the third place, defendant contends that the trial court committed reversible error in that it failed to find that defendant's right to divert six cubic feet of water through the ditch was equal to and not inferior to that of plaintiff.

In order to understand defendant's first contention, it is necessary to refer to the evidence and to the findings. The trial court specifically found that plaintiff was "at all times herein mentioned entitled to the possession of a perpetual easement and water right in and to said Foothill Ditch, formerly known as the Pogue, Wallace and Crocker Ditch, from the head thereof at a point in Section Twenty-six (26), Township Seventeen (17) South, Range Twenty-seven (27) East, M. D. B. & M., down to and near the Southwest corner of the Southeast quarter of Section Nine (9), Township Eighteen (18) South, Range Twenty-Seven (27) East, M. D. B. & M., being a distance of about four miles from the head of said ditch, and the right to divert and flow through said Foothill Ditch the said three (3) cubic feet of water per second, and that said easement and water right is now and was at all times herein mentioned appurtenant to the lands of the stockholders of plaintiff herein, and their predecessors in interest; and that the said plaintiff has the right to divert said three (3) cubic feet of water per second from said Kaweah River, by means of said Foothill Ditch, also known

as Pogue, Wallace & Crocker Ditch, or any other ditch, or at any other point on said river, or by any other means it may provide''. The court also found that '' . . . the said ditch does now and has at all times since its construction prior to said decree of 1883 followed a course from this point of diversion from the said Kaweah River in a southwesterly direction through the lands described in the said decree of partition and other lands; that the said ditch has been known and designated by various names, among others as 'Pogue, Wallace and Crocker Ditch', 'Pogue's Lower Ditch', and 'Wallace Ranch Water Company's Ditch', and is now known as and will be referred to herein as, the 'Foothill Ditch'; that, although the respective predecessors in interest of plaintiff and defendant have changed the point of diversion of the said ditch in the Kaweah River from time to time, the said point of diversion has always been at substantially the same point, and, upon any change in the point of diversion of the said ditch or in the course which the said ditch has taken or followed through the lands hereinabove described and referred to, both plaintiff's predecessors and defendant's predecessors have used the same ditch as so changed in course and in point of diversion from time to time, and plaintiff and plaintiff's predecessors have each and all used the said ditch and have claimed the right to use the said ditch and to divert the said three (3) cubic feet of water from the Kaweah River through the said ditch and to transport said three (3) cubic feet of water through the said ditch to the lands supplied and irrigated by the said three (3) cubic feet of water, as aforesaid.''

Defendant contends that by certain other findings the trial court found that the present ditch is not a relocation of the old one; that there are two ditches; that defendant is the sole and absolute owner of the Foothill Ditch and that plaintiff has no interest therein. The judgment was based on the above-quoted findings. As we read the record, the overwhelming weight of evidence supports the quoted findings. The following portions of the statement of facts appearing in the opinion of the District Court of Appeal, Fourth Appellate District, prepared in this cause when it was pending before that court, correctly portray the facts involved and are hereby adopted as part of the opinion of this court:

"About the year 1857 John Swanson owned land in what is now Tulare county and which was riparian to the Kaweah river, and by means of a ditch diverted water from the river which he put to beneficial use on his property. Shortly after 1863 the land, ditch and water rights were acquired by J. W. C. Pogue, W. H. Wallace and C. W. Crocker as tenants in common. In 1875 they enlarged the ditch, which became known as the 'Pogue, Wallace and Crocker Ditch', and increased the amount of water appropriated and put to beneficial use. In 1877 they constructed a dam in the channel of the river, just below the head of this ditch, to maintain the flow of water they had been diverting. This diversion dam remained intact in the river until the early part of 1890.

"Prior to November 2, 1883, J. W. C. Pogue acquired the one-third interest of C. W. Crocker in the land, ditch and water rights. W. H. Wallace had died and Emeline Wallace was the duly appointed, qualified and acting administratrix of his estate. J. W. C. Pogue brought an action against the administratrix and the heirs at law of the deceased, and a decree of partition was rendered on November 2, 1883. The land and water was divided between the parties and the decree confirmed the report of the referees appointed to partition the property. In this report we find that the lands allotted to Pogue were to be 'charged with the servitude hereinafter specified'. The report then proceeded to set apart a portion of the property to the defendants and provided that 'said referees have further set apart and allotted to the said defendants Emeline Wallace, Cora A. Wallace and William Henry Wallace, and as appurtenant to said lands allotted to them as aforesaid, a perpetual easement and right of way, on and across said lands allotted to J. W. C. Pogue as aforesaid to flow and convey over and across the same and in said water ditch, one-third of all the water appertaining to the said ditch or which the said ditch may lawfully divert from said Kaweah River'. The decree of partition contains the following: 'And it is further ordered, adjudged and decreed that said defendants, Emeline Wallace, Cora A. Wallace and William Henry Wallace are the owners, as appurtenant, to said lands last above described, of a perpetual easement and right of way, on and across the said lands hereinbefore adjudged and allotted to said plaintiff J. W. C. Pogue, to flow and convey over and

across the said lands, in that certain irrigation ditch, situate thereon and referred to in said Referees' report, one third of all the water appurtenant to said ditch, and which said ditch may lawfully divert from the Kaweah River.'

"Plaintiff derives its title to its water right, and interest in the ditch from Emeline, Cora A. and William Henry Wallace; and defendant derives its title from J. W. C. Pogue, each through various mesne conveyances. Up to, at least, 1890 the ditch was called the 'Pogue, Wallace and Crocker Ditch'.

"In 1890 the dam across the river was blown out. Pogue proceeded to construct another intake for the ditch. He went down stream about six hundred feet and built another dam, dug through the river bank into a slough which was sometimes referred to as an old bed of the river, dammed the slough about twelve hundred feet from the opening and diverted the water into a new ditch which extended southwesterly for about half a mile where. it joined the Pogue, Wallace and Crocker ditch. Thereafter Pogue and his successors in interest diverted their water from the Kaweah river through this ditch. Defendant maintains that this new ditch and its subsequent extensions to the Wallace ranch has always been known as 'Pogue's Lower Ditch' to distinguish it from the original Pogue, Wallace and Crocker ditch.

"Just how the Wallace ranch owners obtained their water for several years after 1890 is not at all clear from the record. We gather and will assume from the testimony of C. E. Goodale who was superintendent (lessee part of the time) of the Wallace ranch from 1895 to 1926, that it was taken out at the old Pogue, Wallace and Crocker heading and through the old Pogue, Wallace and Crocker ditch until 1896. In that year this dam was blown out and thereafter their water was taken from the river through the new Pogue heading and the one-half mile of new ditch which Pogue had constructed. Goodale testified: 'I was friendly with Pogue and I arranged with him to take it out there.' Portions of the old Pogue, Wallace and Crocker ditch were visible at the time of the trial in 1931, but after 1896 it is probable that no water had been conveyed through that portion of it above its junction with the new ditch constructed by Pogue.

"By stages, and between 1896 and probably about 1906, the new ditch, the first half mile of which Pogue had con-

structed in 1890, was continued as a ditch separate from the old Pogue, Wallace and Crocker ditch, to a point about three hundred yards into the Wallace ranch property where it joined the old ditch which, at the time of the trial, continued through the Wallace ranch in about its original location and had been continued several miles beyond the boundaries of the Wallace ranch. By 1914 the new ditch had been replaced with a flume which was generally constructed in or over the ditch except in one place when a broad curve was eliminated. There is no showing that the plaintiff or its predecessors in interest contributed anything towards building the new ditch and flume. They were not charged anything for flowing their water through it for a number of years.

''Plaintiff maintains that the new ditch was known indiscriminately as the 'Pogue, Wallace and Crocker Ditch', 'Pogue's Lower Ditch' and the 'Foothill Ditch'. Defendant maintains that it was known as 'Pogue's Lower Ditch', 'Bonnie Brae Ditch' and the 'Foothill Ditch' and never as the 'Pogue, Wallace and Crocker Ditch' which, according to its contention, was the exclusive name of the original ditch constructed by the three joint tenants whose names it bears.

''Defendant maintains that the partition decree of 1883 gave plaintiff's predecessors in interest an easement in the old original Pogue, Wallace and Crocker ditch and in this alone; that there is no easement in the new ditch and that plaintiff has no property or interest in it other than the right to require defendant to divert three cubic feet a second of water from the Kaweah river and flow it through the new ditch to the Wallace ranch lands; that as it is a public utility plaintiff must pay the charges fixed by the railroad commission for these services. We do not understand that defendant contends that plaintiff cannot require it to divert the water from the Kaweah river and convey it to the Wallace ranch properties.

''Plaintiff contends that it is the owner of an easement in the new ditch and that it can flow its water through that ditch and is, or may be, liable for one-third of the cost of its maintenance and operation. It maintains that the new ditch is a change of location of the old one which was made gradually over a period of years for the convenience of defendant and its predecessors in interest and that plaintiff is the

owner of an easement in the new ditch. From this premise plaintiff argues that as it is not a public utility the railroad commission has no jurisdiction and no right to impose a charge upon plaintiff for conducting its own water through its own right of way. The trial court generally found in accordance with plaintiff's contentions and rendered judgment accordingly.

"Whether there were two separate ditches or only one which was merely a relocation of the first ditch is of vital importance to a settlement of this portion of the controversy between the parties. The names by which the new ditch as well as the original ditch were known must have an important bearing on its ultimate determination.

"The parol evidence in the record is in conflict on the name bestowed on the new ditch. The documentary evidence is illuminating. The deed from Cora Wallace Morton (formerly Cora A. Wallace and who acquired the interests of Emeline and William Henry Wallace) and James H. Morton, her husband, to plaintiff, dated October 17, 1907, contains the following: 'Also all the right, title and interest which the said parties of the first part or either of them have in or to those certain ditches known as the Pogue, Wallace & Crocker Ditch; the ditch known as Pogue's Lower Ditch; and the ditch known as and called the Bonnie Brae Ditch; or the ditch of the Central Water and Irrigation Company. Together with all water and water rights in the waters of the said Kaweah River owned by the parties of the first part or either of them, by reason of the ownership by said parties of the first part, or either of them of any interest in the said ditches above named or either of them, or of the waters diverted by said ditches or either of them.' The Central Water & Irrigation Company was a predecessor in interest of defendant. The first document in defendant's chain of title after the partition decree of 1883 is a deed from J. W. C. Pogue to Edward Records dated May 29, 1906. This deed contains the following: 'And the said party of the first part doth hereby sell, assign, transfer and convey unto the said party of the second part all the right, title, interest and estate of the party of the first part, in and to that certain water ditch known as Pogue, Wallace and Crocker Ditch, and sometimes known as "Pogue's Lower Ditch," which said ditch commences in the Kaweah River . . . ' In it are also

repeated phrases similar to the following: 'Also, all that portion of the northwest quarter of said section two, in township eighteen south, range twenty seven east, lying north of the south bank of said Pogue, Wallace and Crocker Ditch, also called "Pogue's Lower Ditch".' The description of the ditch as the 'Pogue, Wallace and Crocker Ditch', sometimes known as 'Pogue's Lower Ditch', is repeated with immaterial variations in the following exhibits introduced by defendant in tracing its chain of title: Deed dated April 6, 1906, Edward Records to Central California Water and Irrigation Company; deed of trust dated July 16, 1906, Central California Water and Irrigation Company to Mercantile Trust Company as trustee; deed dated April 11, 1913, of H. B. McClure, commissioner on foreclosure of the foregoing deed of trust, to W. J. McLean, L. J. De Sabla and Jules Mathieu; deed dated April 14, 1913, from W. J. McLean, Jules Mathieu and Anne Mathieu, his wife, and Leon De Sabla to H. T. Miller; deed dated June 26, 1913, from H. T. Miller and Blanche Miller, his wife, to T. M. Dungan; deed dated September 26, 1913, from T. M. Dungan to Rosa S. Spaulding; deed dated April 15, 1914, from Rosa S. Spaulding to R. C. Merryman; deed dated May 6, 1914, from R. C. Merryman and Agnes H. Merryman, his wife, to Foothill Ditch Company.

"In February, 1926, the Foothill Ditch Company filed its application with the railroad commission seeking permission to sell its property to the Lindsay-Strathmore Irrigation District. The application contained the following: 'That the ditch, right of way, water rights and appurtenances which it is sought to transfer are described as follows, to-wit: All that certain water ditch or conduit and the concrete pipe line constituting an extension thereof now known as the Foothill Ditch, and formerly known as the Pogue, Wallace and Crocker Ditch, and sometimes known as Pogue's Lower Ditch, . . . ' Attached to the application is the copy of a proposed contract of sale in which the foregoing description was repeated. A list of names of 'Consumers of Water from Foothill Ditch as of January 1, 1926', was also filed which does not contain the name of plaintiff. In this exhibit the following appears:

" 'Wallace Ranch Rights.

" 'The rights of the successors in title and interest of Emmaline Wallace, Cora Wallace and William Henry Wal-

lace, as defined in a certain judgment and decree confirming report of referees, filed November 2, 1882, in a certain action then pending in the Superior Court of the County of Tulare, State of California, No. 671, wherein J. W. C. Pogue was plaintiff and Emmaline Wallace, Administratrix of the Estate of William H. Wallace, Deceased, Emmaline Wallace, Cora Wallace, William Henry Wallace, George W. Locke and Samuel Lavenson were defendants.

" 'Also, the rights, if any, of Cora Wallace Morton and her husband J. H. Morton, and their successors in title and interest, secured or arising out of a certain judgment dated January 26, 1904, entered in an action then pending in the Superior Court of the County of Tulare, State of California, No. 4657, wherein R. E. Hyde and the Wutchumna Water Company, a corporation, were plaintiffs, and the Kaweah Power and Water Company, J. W. C. Pogue, W. G. McVey, Harry Wilkson and others were defendants.

" 'The right of Cora Wallace Morton and James H. Morton, if any, under a certain modified judgment dated July 30, 1909, and entered in an action then pending in the Superior Court of the County of Tulare, State of California, No. 4823, wherein the Consolidated Peoples Ditch Company, a corporation, was plaintiff and J. W. C. Pogue, the Kaweah Power and Water Company, a corporation, Cora Wallace Morton and James H. Morton were defendants.'

"We have already quoted from the decree of partition dated November 2, 1883, incorrectly given as 1882 in the foregoing quotation. We do not find in the record any judgment dated January 26, 1904, in the case of *R. E. Hyde and Wutchumna Water Co.* v. *Kaweah Power & Water Co., J. W. C. Pogue, et al.* There is a judgment dated October 18, 1909, bearing the same number and with the same parties plaintiff. It appears from the judgment roll in that case that Pogue had succeeded to the interest of the Kaweah Power and Water Company and that the Central California Water Company had succeeded to the interest of Pogue and had been substituted as defendant in his place. The judgment is based on a stipulation and it is recited that the substituted defendant had the right to divert from Kaweah river, subject to diversions by the plaintiffs (Hyde, et al.), six second cubic feet of water 'through the said Pogue, Wallace and Crocker Ditch, sometimes called Pogue's Lower

Ditch, at the head-gate of said Ditch'. An amendment to the answer of Pogue in that case filed on February 26, 1902, contains the following allegations: 'And this defendant further alleges that after the partition of said land first above described, between this defendant and his said associate, said C. W. Crocker, and the heirs at law of said W. H. Wallace, as hereinbefore stated in this paragraph of this answer, up to the commencement of this action, this defendant continued to own and use, a two third undivided interest in and to said Pogue, Wallace and Crocker ditch, and to the water diverted thereby, and that ever since the latter part of the year 1883, he has used said Pogue, Wallace and Crocker ditch, for the irrigation of three hundred acres of land.' We cannot find in the record the modified judgment dated July 30, 1909, in the case of *Consolidated Peoples Ditch Co.* v. *J. W. C. Pogue et al.* . . .

"Receipts from the year 1914 to the year 1931, for taxes paid by defendant are in the record. In all of these receipts the following description is used: 'Pogue, Wallace & Crocker Ditch which commences in Kaweah River 17 miles of ditch 1 mile of flume 6 miles fence'. In the later receipts (beginning 1922), the word 'Co.' is inserted after the word 'ditch' and 'no fencing' is substituted for '6 miles fence'. Also in some receipts 'which commences' is omitted and in others 'which com.' is used.

"Under date of May 29, 1923, the attorney for defendant wrote C. A. (E) Goodale as follows: 'The officers of the Foothill Ditch Company have been informed that you are planning on pumping the water at some point near the river into the Foothill Ditch and conducting it down that ditch to your lands. Of course, you understand that you have a right to convey three cubic feet of water per second through the ditch and the officers of the company are wondering whether or not you are proposing to use the ditch in excess of that right. They will not want you to do so without first seeing Mr. Merryman and making some arrangement with him in regard thereto.'

"The Watson Ditch Company filed an action against J. W. C. Pogue. The Kaweah Power and Water Company, Cora Wallace Morton and J. H. Morton. The answer of J. W. C. Pogue contains the following concerning his change of the heading and the ditch in 1890 and the rights of Cora

Wallace Morton therein: 'That in the month of January 1890 certain parties, unknown to this defendant at that time, and while this defendant was absent from his land and premises, unlawfully and without the knowledge of this defendant entered upon said dam and placed therein a large quantity of giant powder and exploded the same in said dam, and thereby blew a portion of said dam out of said river, and, as this defendant is informed and believes, left a large charge of giant powder in said dam, which charge so left in said dam was not exploded. That by reason of the fact that said charge of giant powder was left in said dam unexploded this defendant and his associates on account of fear of bodily injury resulting to them from the explosion of said charge of giant powder, left in said dam as aforesaid, refrained from rebuilding said dam where the same was originally placed, but thereupon changed the head of said Pogue, Wallace and Crocker Ditch to a point on the channel of said Kaweah River about one hundred yards below where the said dam was formerly located, and thereupon cut a ditch from the channel of said river for a distance of two hundred feet, . . . ; that said ditch two hundred feet in length led and leads into the south or original channel of said Kaweah River, and the water so diverted into said south or original channel of said river flowed, and flows down to a point about four hundred yards from the point where said ditch entered said original or south channel of the Kaweah River; that thereupon this defendant dug and constructed a ditch leading from said lower point in said original or south channel of said Kaweah River in a southwesterly direction for a distance of about a half a mile which said last named ditch was connected with the channel of said Pogue, Wallace and Crocker Ditch at a point about three quarters of a mile below the original head of said Pogue, Wallace and Crocker Ditch as the same was enlarged by this defendant and his said associates in 1875 as aforesaid; that from the month of January, 1890, until the month of May, 1890, the head of said Pogue, Wallace and Crocker Ditch, as the same was changed in the month of January, 1890, diverted and carried away from the channel of said Kaweah River water sufficient to fill said Pogue, Wallace and Crocker Ditch without the aid of a dam at the head of said ditch; that in the month of May, 1890, this defendant peaceably, openly,

notoriously and adversely under a claim of right against said plaintiff (Watson Ditch Company) and its predecessors, so to do, placed a dam in the channel of said Kaweah River at the head of said Pogue, Wallace and Crocker Ditch, which said dam was placed about one hundred yards below the first and original dam hereinbefore referred to, and also at the time last stated this defendant peaceably, openly, notoriously and adversely under a claim of right against said plaintiff and its predecessors, so to do, placed a dam in the original or south channel of said Kaweah River at the point where said new ditch was constructed and led out from said original or south channel down to the original channel of said Pogue, Wallace and Crocker Ditch, and by means of said two dams hereinbefore referred to and the ditches leading into and from said original or south channel of said river, this defendant has, ever since the month of May, 1890 to a short time immediately prior to the 20th day of September 1899 diverted and carried away from the channel of said Kaweah River a stream of water . . . And this defendant further alleges that Cora Wallace Morton, the wife of J. H. Morton, is the successor in estate of this defendant's said associate W. H. Wallace, and as such she is the owner of an undivided third of said ditch, and for more than five years prior to the 20th day of September 1899 her predecessors, and she as their successor in estate, were in the occupation and use of said ditch as a tenant in common thereof, and by means of said dams and ditch diverted water from said Kaweah River and used said water so diverted upon a portion of the lands first hereinbefore described, continuously and uninterruptedly, and, as this defendant is informed and believes, adversely and under a claim of right against said plaintiff (Watson Ditch Company) and its predecessors, and with knowledge and acquiescence of said plaintiff and its predecessors.''

From this statement of facts it appears that many years ago the original head of the Pogue, Wallace and Crocker Ditch was abandoned and that by agreement the diversion point was changed. Thereafter, over a period of years, the line of the ditch was straightened, flumes constructed, and the old ditch abandoned. However, we are of the opinion that the recited evidence clearly shows that since 1883, and until 1928, defendant and its predecessors in interest by

their actions, by their respective deeds, and by declarations in various pleadings, have at all times recognized that plaintiff and its predecessors in interest had an easement in the new ditch. Throughout the years the change in the course of the ditch has never been regarded by either the plaintiff or the defendant, or by any of their respective predecessors, as altering the rights of either party in the ditch, as fixed by the 1883 partition decree. ██ The law is clear that the mere relocation by mutual consent of a right-of-way or other easement does not alter the rights of the owner of the easement. (*Vargas* v. *Maderos*, 191 Cal. 1 [214 Pac. 849]; *Cox* v. *Blaydes*, 246 Ky. 121 [54 S. W. (2d) 622]; *Davis* v. *Wilkinson*, 140 Va. 672 [125 S. E. 700]; *Berkey & Gay Furniture Co.* v. *Valley City Milling Co.*, 194 Mich. 234 [160 N. W. 648].) The trial court specifically and at length found the necessary facts to support this view. If these were the only findings there could be no doubt of the correctness of the judgment based thereon. But the trial court also found that in 1906 the Watson Ditch Company brought an action in which the predecessors of both plaintiff and defendant were named as defendants; that that action involved, among other things, the right of plaintiff and defendant here to divert water through the Foothill Ditch; that in that case judgment was entered pursuant to a stipulation signed by the predecessors of the plaintiff and defendant in the instant case. After making these findings, the trial court in this case then incorporated by reference in its findings the judgment and the stipulation upon which it was based in the Watson Ditch Company case "as fully and to the same effect as though the same were herein set out in full". In the judgment in the Watson Ditch Company case, thus incorporated into the findings in this case, appears the following:

"Now the Court being advised in the premises it is ordered, adjudged and decreed, and it is the judgment of this Court, that the said defendant, J. W. C. Pogue, is the owner of that certain water ditch described in his answer, and called Pogue's Lower Ditch, and which leads out of the channel of the Kaweah River referred to in the pleadings of this case at a point on the Southeast Quarter of Section Twenty-six in Township Seventeen South, Range Twenty-seven East, of the Mount Diablo Base and Meridian, distant about one hundred yards below the head of what is referred to in said

defendant Pogue's Answer as the original head of the Pogue, Wallace and Crocker Ditch; . . . that said defendant J. W. C. Pogue is also the owner of an undivided two-thirds of that certain ditch described as the Pogue, Wallace and Crocker Ditch described in the pleadings in this case from the head of said Ditch, where the same connects with the said Kaweah River down to and through the lands of said defendant Cora Wallace Morton, described in the answer. of said defendant Cora Wallace Morton; . . . that said defendant Cora Wallace Morton is the owner of the undivided one-third of that certain ditch described in the pleadings in this case as the Pogue, Wallace and Crocker ditch, from the head thereof where it connects with the channel of said Kaweah River, down to and through the lands of said defendant Cora Wallace Morton described in the answer of said defendant Cora Wallace Morton in this case; that said defendant, Cora Wallace Morton, has the prior and superior right, as against the said plaintiff, (Watson Ditch Company) to divert and carry away from said river at all times three cubic feet of water per second by means of the said Pogue, Wallace and Crocker Ditch or by any other ditch or means which she may provide."

Defendant contends that these findings are wholly inconsistent with and contradictory to the findings quoted earlier in this opinion to the effect that the new ditch constructed by Pogue and his successors was but a relocation of the old Pogue, Wallace and Crocker Ditch. It is contended that by incorporating the judgment and stipulation in the Watson Ditch Company case into its findings in this case the trial court has found that the new ditch, or so much of it as had been constructed in 1906, was the exclusive property of Pogue; that plaintiff's and defendant's predecessors had ·a one-third and two-thirds interest, respectively, in the old ditch; that there were two separate ditches; and that plaintiff and its predecessors had no interest in the new ditch.

██  It cannot be doubted that the incorporation of the stipulation and judgment, as above recited, had the effect of making the recitals of the stipulation and judgment in the Watson Ditch Company case findings of fact in the instant case. It also cannot be doubted that portions of the judgment in the Watson Ditch Company case are contradictory to and inconsistent with the particular findings that

plaintiff has an easement in the Foothill Ditch. Plaintiff presents a lengthy argument by which it is attempted to reconcile these findings, but we are of the opinion that the findings cannot be reconciled. However, as already stated, the evidence, although conflicting, overwhelmingly supports the findings that the new ditch is but a relocation of the old. That this was the view of the trial court is evidenced by the fact that the judgment is based on these findings. ■ It was formerly the rule in this state that where two findings on an essential fact are conflicting, neither can be relied upon to support the judgment. (*Moody* v. *Newmark & Edwards,* 121 Cal. 446 [53 Pac. 944]; *Fanta* v. *Maddex,* 80 Cal. App. 513 [252 Pac. 630].) It is also well settled, however, that when a general finding conflicts with a special finding, the latter controls. (24 Cal. Jur. 974, sec. 206, and cases cited.) ■ Moreover, we are further of the opinion that under the power conferred on appellate courts by the addition of section 956-A to the Code of Civil Procedure in 1927, appellate courts, where justice requires it, have the power, when findings are conflicting, to disregard one of the findings and to affirm the judgment, in order that, to use the express language of the section, "wherever possible causes may be finally disposed of by a single appeal, and without further proceedings in the trial court, except where the interest of justice requires a new trial". Acting pursuant to that power, we therefore order stricken from the findings those portions of the stipulation and judgment in the Watson Ditch Company case in conflict with the specific findings above quoted.

■ The second point raised by defendant is that certain portions of the findings and judgment are in conflict with certain orders of the railroad commission. The trial court found "that the only obligation, debt or liability which may accrue or arise by reason of plaintiff's exercising its rights hereinabove described and by reason of plaintiff's conducting and transporting its said three (3) cubic feet of water per second through the said ditch, is an obligation and liability to contribute toward its share of the cost and maintenance and cleaning of the said portion of the ditch in which and through which plaintiff's easement and right of way extends; that plaintiff has for a long period of time acquiesced in the payment of the sum of one hundred fifty ($150.00)

dollars per year as plaintiff's share of the cost of cleaning and maintenance of the above described portions of the said ditch; that the payment of the said sum of one hundred fifty ($150.00) dollars per year is not and cannot be made a condition precedent to the exercise by plaintiff of its right to conduct or transport its said three (3) cubic feet of water per second through the said ditch''. The court also found: "that said rights of plaintiff to divert three cubic feet of water per second from the Kaweah River into and through said Foothill Ditch is now, and has been a vested right and easement existing for more than ten years prior to the year 1915, and plaintiff has not, nor has any of its stockholders ever acquiesced in any jurisdiction of the Railroad Commission of the State of California over any interest, right or estate which plaintiff has therein, as hereinbefore set forth, and that the Railroad Commission of the State of California has no jurisdiction, right, or authority to change, affect or modify any of the rights that plaintiff has as hereinabove in these findings set forth.'' The judgment provides in part: "that the only obligation, debt or liability which may accrue, or which can accrue by reason of plaintiff's exercising its right as described in this judgment is an obligation and a liability to contribute toward the cost of maintenance and cleaning of the portion of said Foothill Ditch over and through which plaintiff's said right of way and easement exists; that defendant has, for a long period of time acquiesced in the payment of the sum of $150.00 per year as plaintiff's proportionate share of the costs of cleaning and maintenance of the said portion of the Foothill Ditch, and that defendant has for the said long period of time acquiesced in taking and receiving said sum of One Hundred Fifty ($150.00) Dollars a year as plaintiff's approximate share of the cost of cleaning and maintenance of the above described portion of the said ditch; that the payment of the said sum of One Hundred Fifty ($150.00) Dollars per year is not and cannot be made a condition precedent to the exercise by plaintiff of any of the said rights of plaintiff or in the use by plaintiff of the said easement.''

In the record it appears that in 1915 the defendant applied to the railroad commission for permission to increase its rates to consumers. In the order and decision of the commission it is stated: "There is one user of water, namely,

C. E. Goodale, of the Wallace ranch, who transports water through the ditch of the Foothill Ditch Company from the Kaweah River to his ranch, some three miles from the intake. For this service he pays nothing at present. Mr. Goodale has an adjudicated right to divert three cubic feet per second from the water of the Kaweah River and owns a third interest in the ditch from his ranch to the intake. I am of the opinion that Mr. Goodale should bear his proportional part of the expense of maintaining and operating the ditch. I will therefore recommend that a rate of 12 cents for one miner's inch (1/50 second foot) for twenty-four hours for water used for the irrigation purposes, and a charge of $5.00 per second foot per month for water transported to what is known as the Wallace ranch, be established.''

It further appears that in 1921 the defendant again applied for permission to raise its rates. The 1921 order and decision of the commission recites that "a public hearing was held at Exeter, of which all interested parties were notified, and given an opportunity to be present and heard''. By this 1921 order the commission raised the rates to consumers of the utility and also raised the rate for the Wallace ranch to $6 per second foot month. Both the 1915 and 1921 orders were properly admitted into evidence. The uncontradicted evidence shows that for many years all costs of operation and maintenance of the ditch have been paid by the defendant, except that after the 1915 order of the commission the plaintiff, as a result of an agreement with defendant, has paid the latter $150 a year as its share of maintenance cost. It is conceded that plaintiff has at no time paid the rates fixed by the commission.

There is one other order of the commission discussed in the briefs, to which reference should be made. This order appears in 33 Opinions and Orders of the Railroad Commission 237, and is entitled "In the Matter of the Application of Foothill Ditch Company, a Corporation, to Increase Rates for Water Supply.'' The decision is dated June 18, 1929. From the opinion, it appears that in 1928 the commission had increased defendant's rates as they applied to plaintiff, and that plaintiff had petitioned for a rehearing on the ground of lack of notice. The rehearing was granted and this opinion filed. This opinion recites in detail the controversy over the ownership of the Foothill ditch and over

plaintiff's claims therein, and specifically holds that that question should not be decided by the commission but by the courts. The opinion holds, however, that since the evidence in that proceeding shows (as does the evidence in the present case) that the utility is furnishing plaintiff a service, the commission has the power to fix rates for that service, whether plaintiff owns a part of the ditch or an easement therein or not. The commission thereupon fixed a rate applicable to the consumers of defendant, including plaintiff, of 14 cents for one miner's inch day of 24 hours. This order and decision was not offered or received into evidence in the present case. Plaintiff contends that under the authority of *Mound Water Co.* v. *Southern California Edison Co.*, 184 Cal. 602 [194 Pac. 1014], this court cannot take judicial notice of the above mentioned order of the commission. Assuming that the plaintiff is correct and that this court cannot take judicial notice of the 1929 order above referred to, it still affirmatively appears from the record that the commission, with full knowledge of the claimed rights of plaintiff, has made at least two orders fixing rates for the service rendered plaintiff by defendant. It does not appear that these orders are void on the face thereof. Under such circumstances, the trial court had no jurisdiction directly or indirectly to overrule an order of the railroad commission. The power to reverse, review, correct or annul orders of that commission rests solely in the Supreme Court (sec. 67 of the Public Utilities Act, *supra*) and the superior court is without jurisdiction in the premises. (*Pacific Tel. & Tel. Co.* v. *Eschelman,* 166 Cal. 640 [137 Pac. 1119, Ann. Cas. 1915C, 822, 50 L. R. A. (N. S.) 652] ; *Truck Owners etc., Inc.,* v. *Superior Court,* 194 Cal. 146 [228 Pac. 19] ; *Allen* v. *Railroad Commission,* 179 Cal. 68 [175 Pac. 466, 8 A. L. R. 249] ; *People* v. *Hadley,* 66 Cal. App. 370 [226 Pac. 836].) It is clear, therefore, that those portions of the findings, conclusions and judgment that purport to fix the rate to be paid by plaintiff to defendant for the service rendered, and that purport to find that the commission was without jurisdiction should be stricken.

The third assignment of error has to do with the failure of the trial court to fix the right of defendant to divert six cubic feet per second through the Foothill Ditch as being equal with the right of plaintiff to divert three cubic

feet per second through that ditch. An examination of the record indicates that it is admitted in the pleadings and in the briefs, and established by uncontradicted evidence, that the right of plaintiff to divert its three cubic feet per second through the ditch is an equal and not superior right to that of defendant to divert six cubic feet per second through the ditch. The two rights find their admitted source in the right of Pogue, Wallace and Crocker, as tenants in common, to divert nine cubic feet per second through the ditch. The tenancy in common was broken by the partition decree of 1883 and the land and water rights divided, but neither party nor its predecessors was then given, nor has it since acquired, a superior right over the other so far as water rights are concerned.

The judgment in the present case recognizes the right of plaintiff to divert three cubic feet per second through the ditch and, by the judgment, the defendant is enjoined from interfering in any way with that right. The probable effect of such a judgment is to make the right of plaintiff superior to that of defendant, when there are not nine cubic feet of water per second in the river, a condition which the evidence indicates has occasionally arisen. Under such circumstances, the trial court should have found that the rights of plaintiff and defendant to their three and six cubic feet of water, respectively, per second are equal and not superior one to the other, and the judgment should also so have provided. It should also have been found and made part of the judgment that, when there is a shortage of water, so that each party cannot obtain its full supply, the deficiency should be borne proportionately by the parties. Under section 956-A of the Code of Civil Procedure, this court has the power to make new and additional findings in such a case, to modify the judgment, and to affirm the judgment, as so modified.

From the foregoing, it is obvious that by a modification of the judgment and by striking out or adding to the findings, as above indicated, this controversy can be finally settled on this appeal, and that the interests of justice do not require a new trial.

It is, therefore, ordered:

1. That those findings and conclusions of the trial court inconsistent with and contradictory to those findings and conclusions to the effect that the Foothill Ditch is a reloca-

tion of the old Pogue, Wallace and Crocker Ditch, and to the effect that plaintiff has an easement in the Foothill Ditch, are hereby stricken from the findings and conclusions.

2. Those portions of the findings, conclusions and judgment that purport to fix the rate to be paid by plaintiff to defendant for the service rendered and that purport to hold that the Railroad Commission was without jurisdiction to fix the rate, are stricken.

3. The findings, conclusions and judgment are hereby modified to provide that the right of plaintiff to divert its three cubic feet per second is equal and not superior to the right of defendant to divert its six cubic feet of water per second through the Foothill Ditch; and it is further made part of the judgment herein that when there is a shortage of water so that plaintiff and defendant cannot each obtain its full supply, the deficiency must be borne one-third by plaintiff and two-thirds by defendant.

As so modified, the judgment is affirmed, both parties to bear their own costs on this appeal.

Langdon, J., Seawell, J., Waste, C. J., and Curtis, J., concurred.