[Civ. No. 14087.   First Dist., Div. One.   Sept. 22, 1949.]

OAKLAND CALIFORNIA TOWEL COMPANY, INC. (a Corporation), Respondent, v. JOHN ROLAND, Appellant.

Morgan V. Spicer and H. R. Whiting for Appellant.

Ernest J. Livengood for Respondent.

WARD, J.—Defendant appeals from a judgment based upon a written contract, by which plaintiff agreed to rent to defendant a certain number of sheets, towels and similar articles and thereafter launder the same and keep defendant supplied with a specified number of each of the articles. Defendant contracted to rent from plaintiff exclusively all articles so specified, to pay for such rental and laundry service, and also for any damages or shortages based on plaintiff's service records at rates listed in the contract agreement. Plaintiff claims that after it had fully performed the agreed terms and conditions for a period of approximately six months defendant repudiated the contract and prevented further performance. As stated in defendant's opening brief, the judgment included the value of goods not returned, damages for breach of contract, a balance due for services, and attorney's fees.

Difficulty arose when plaintiff was unable to obtain the soiled linen from defendant's place of business. Plaintiff requested the right to make an inventory of the rented linen which defendant had on hand. This request was refused. Defendant insisted that plaintiff supply an equal amount of

clean linen in exchange for the soiled articles. Plaintiff's position, substantially supported by the evidence which was adopted by the court as the basis for the findings of fact and conclusions of law, appears in the following testimony: "THE COURT: I might ask in furnishing linen did you furnish the exact number of articles that are required or do you furnish a greater number? A. Well, I might answer it this way and clarify what was brought up, if I may. At the time the contract was negotiated they have 100 beds and we gave them 400 sheets the first time because there are two sheets to the bed and there are two more sheets to make up beds with and the next delivery you complete the rest of the contract and from that time on that contract calls for the turning over of at least 200 sheets for the capital investment involved in the contract. In other words, there are certain charges in which they must turn in that amount of linen to pay for them; otherwise the company would have no return on their capital investment. That is the reason I told Mr. Roland in the end when he was asking us to bring back clean for soiled that wasn't what we arranged under the contract because if he only turned in 50 sheets and we only brought 50 sheets the company would be loser because they are entitled to have the return on the capital of 100."

Plaintiff's and defendant's briefs present certain points solely covering the *number* of articles delivered by plaintiff or returned by defendant. The evidence in some instances in this respect is inharmonious. However, the trial court determined these factual questions and it is not necessary to prolong this opinion by narrations of the contradictory statements, as the trial court's findings in this connection must be upheld inasmuch as there is substantial evidence to sustain the findings.

Plaintiff presented a summary of deliveries and pickups made at defendant's hotel. This summary was corrected subject to certain laundry items, the property of plaintiff recovered through the sheriff in a claim and delivery action. Further adjustment was made relating to shortages and errors due to plaintiff's failure to supply clean linens while the contract was in effect. Plaintiff made up certain "shortages" representing discrepancies between the number of articles listed on the delivery tag to defendant and those counted by defendant's housekeeper.

It is claimed that the court erred in finding "That defendant repudiated and breached said contracts in that

defendant failed and refused to deliver to plaintiff upon demand certain articles of merchandise . . .'' because of the failure to find that at the time of demand and refusal plaintiff was entitled to the immediate possession of the articles. Defendant is correct in this criticism, so far as it is the rule that a claimant in the present form of action must be entitled to immediate possession of the property at the time of the commencement of the action. (*Paganucci* v. *Kalpouzos,* 78 Cal. App.2d 714 [178 P.2d 62].) However, in the present case other findings inferentially show, and the evidence proves, that plaintiff was entitled to possession. There is no dispute that the respective parties entered into the contract set forth in the pleadings. The contract provided that the lessee pay rental for the articles and also pay for any articles damaged, lost or for any cause not returned to the lessor. The court found that the goods were delivered pursuant to the contract and that the defendant's allegation that he had returned all of plaintiff's property in defendant's possession was untrue. The evidence shows that all of the property to which plaintiff was entitled had not been returned. If necessary this court could make such a finding on the evidence presented. (Code Civ. Proc., § 956a.) However, it is not essential that this court insert a separate finding. The findings when read as a whole indicate that if a specific finding had been made it would have been adverse to defendant. ''But under the rule that the findings are to receive such a construction as will uphold rather than defeat the judgment thereon, they will be upheld where, as a whole and considered and construed in connection with the pleadings and the issues, they sufficiently show or warrant the inference that the plaintiff was the owner and entitled to the possession of the property described in the complaint.'' (5 Cal.Jur. 198; see, also, *Wallace Ranch W. Co.* v. *Foothill D. Co.,* 5 Cal.2d 103 [53 P.2d 929]; *Chamberlain* v. *Abeles,* 88 Cal.App.2d 291 [198 P.2d 927].)

The finding next attacked by defendant refers to loss of profits due to the breach of the contract. Defendant contends that it was erroneous to allow any damages inasmuch as plaintiff rescinded the contract. Defendant's theory of the alleged rescission is that plaintiff wrote to defendant calling attention to the fact that defendant refused to deliver to plaintiff certain soiled linens, which constituted a breach of the contract, and that plaintiff demanded such linens. The rule that after rescission a party may not make the contract a basis for an action for damages (*Lemle* v. *Barry,* 181 Cal. 1

[183 P. 150]; *House* v. *Piercy*, 181 Cal. 247 [183 P. 807]) is not applicable in the present case for the simple reason that the facts herein do not constitute a rescission. There was no declaration of rescission by plaintiff that effectually terminated the contract. On the contrary plaintiff demanded the return of soiled linen and defendant refused to comply, which resulted in the present action for breach of the contract. Plaintiff threatened to take means to obtain the missing articles, but in each of two letters addressed to defendant on this subject the following statement appears: "We wish you to understand that in removing the goods we are in no way agreeing to cancellation of the agreement."

The findings list the various articles, the quantity, the value of each item and the total value delivered pursuant to the contract; the portions of goods recovered by a claim and delivery action and from another laundry; the period of time remaining under the terms of the contract; the amount plaintiff would have received for the unexpired period had defendant fulfilled his obligation; the cost of performance from the date of the breach; the amount of resultant loss of profits, and a separate amount due plaintiff for services performed before the breach. From this total a credit was allowed for a sum deposited by defendant as security for plaintiff's performance, together with a further credit for overpayment on certain laundry work performed by plaintiff. From these amounts the balance due plaintiff was fixed and judgment entered accordingly. The computation is not seriously attacked, but the measure used by the trial court in awarding the amount of judgment is claimed to be incorrect. One particular item is challenged. The finding of an indebtedness of $117.36 for the period prior to repudiation covers four weeks at $29.34 a week, which is the equivalent of $117.36. The evidence is definite and the findings sufficient on this subject. Another alleged error is that the court added 7 per cent to the agreed value of the articles claimed by plaintiff. The defendant was given credit for the articles recovered but the court in computing the amount due plaintiff included the sum of $98.06 representing 7 per cent of the value of all the articles. The agreement provided: "THE TOTAL CHARGES FOR ALL SERVICE RENDERED BY LESSOR ARE TO BEAR AN ADDITIONAL PERCENTAGE OF 7%." *All* service under the agreement reasonably includes not only laundering, delivering and collecting but the *use* of the articles, which is the main purpose of the contract.

■ Defendant claims that the measure of damages adopted by the trial court is incorrect. One of the witnesses appearing for plaintiff testified that 3½ per cent on the gross value of business constituted profit. From the figures presented, this percentage would amount to $25.67, which defendant claims represents the total loss of profits due to defendant's breach of contract, instead of the sum of $425.43 as found by the court. Damages in the present case are for the detriment caused to plaintiff's business, or benefit lost, as result of the breach. A computation of damages in a matter similar to the present case includes prospective profits based upon an essential element of service. ''Whether a particular charge is an essential element and therefore to be considered, or whether it is not affected as a consequence of the nonperformance of the contract, is a question of fact.'' (*Oakland Cal. Towel Co.* v. *Sivils,* 52 Cal.App.2d 517, at p. 520 [126 P.2d 651].)

■ The court allowed attorney's fees in the sum of $300. Ordinarily attorney's fees are not within the rule of awarding damages (Civ. Code, § 3336) but may be allowed in payment of services in pursuit of personal property based upon contractual agreement. Attorney's fees may be provided for by statutory provision. (Code Civ. Proc., § 1021; see *Viner* v. *Untrecht,* 26 Cal.2d 261 [158 P.2d 3].) Attorney's fees also may be allowed under circumstances not pertinent to the present case. (*Winslow* v. *Harold G. Ferguson Corp.,* 25 Cal.2d 274 [153 P.2d 714].) One of defendant's objections to the attorney's fees allowed by the court is that plaintiff did not fully perform its agreement and therefore is not entitled to compensation for a subsequent breach by defendant. The question of breach of the contract, a question primarily ·of fact, has already been determined.

■ In plaintiff's brief a request is made that this court make an allowance to plaintiff for additional counsel fees incurred on appeal. Plaintiff cites *Painter* v. *Estate of Painter,* 78 Cal. 625 [21 P. 433]. The attorney's fee in that case was a statutory fee. (See Prob. Code, § 703, formerly Code Civ. Proc., § 1510.) In the Painter case it was held that a reasonable attorney's fee to resist a claim against an estate was as just and proper for services in the upper as in the lower court. The lower court had previously allowed a fee for services in the trial court. In the present case the parties contracted for reasonable counsel fees incurred by the lessor in enforcement of the terms of the agreement. That language does not appear to be ambiguous. The enforcement of the

terms of the agreement required that on appeal there should be a defense of the judgment. Whether the amount of the fee allowed by the trial judge contemplated services on appeal is a question which an appellate court is unable to determine. In any event, an appellate court could not fix a fee until the judgment becomes final. In the Painter case the court stated, at page 628: ''If the supreme court had in all cases the burden thrown upon it of determining such matters, where oral testimony would often have to be heard as to the proper fee to be fixed, including such facts as the value of the estate, its condition, and the amount of service performed, it would be very inconvenient, and perhaps not so easy of ascertainment as in the court where the estate is held in charge and the proceedings are first begun. It is therefore reasonable to suppose that the legislature intended to leave, as a matter of original jurisdiction, the fixing of all fees contemplated by the section *supra* [Code Civ. Proc., § 1510] to the superior court.'' In *Adams* v. *California Mutual Building & Loan Assn.*, 18 Cal.2d 487 [116 P.2d 75], it was also held that the reasonableness of the award is for the determination of the trial court. It was further stated in the Painter case, at page 627: ''This authority given the court could only be exercised when the fee, now in dispute, was to be allowed by an order made after final judgment, and the allowance is necessarily an incident to such judgment when given against the claimant as plaintiff in the action.'' In accordance with the above, the trial court, if it be so inclined, may allow a *reasonable* fee for services on appeal.

The judgment is affirmed. The motion for counsel fees on appeal may be filed within 30 days from the date of the filing of the remittitur.

Peters, P. J., and Bray, J., concurred.

A petition for a rehearing was denied October 22, 1949, and appellant's petition for a hearing by the Supreme Court was denied November 17, 1949.